## The State of Iowa v. Cavers *et al.*

22   343
112   507

1. Practice: INTERFERENCE OF NOMINAL PARTY: BOARD OF SUPERVISORS. Where a party in interest is allowed to use the name of another for the enforcement of a right, the nominal party will not be allowed improperly to interfere; and where an appeal is taken by the county board of supervisors from a decision of the District Court ordering them, as county canvassers, to count certain votes rejected by them upon the question of relocating the county seat, a subsequently elected board will not be allowed to interfere to dismiss such appeal, or prevent a hearing of the case on its merits.

2. County seat: VOTE FOR REMOVAL: VARIATION IN NAME. In the vote for the relocation of the county seat in Alamakee county, a large number were cast for "Waukon," and a large number for "The point between Lansing and Capoli;" a number were also cast for "Lansing." It appeared that "Lansing" was the name by which "The point between Lansing and Capoli"— which was the technical name — was usually spoken of and known; and the facts showed that the votes in question were actually intended for the latter place. The judges of election made their return to the county canvassers according to the names as written on the ballots, but the county canvassers conected the votes cast for "Lansing" under the technical name of "The point between Lansing and Capoli," and counted them as for the latter place. *Held,* that in this there was no improper exercise of ministerial power on the part of the county canvassers.

3. Election: RETURN: CANVASSERS: The board of county canvassers has no right to reject an election return of a township on the ground of extrinsic circumstances connected with its execution, and declare a result different from that legally manifested by the people.

*Appeal from Delaware District Court.*

SATURDAY, JUNE 15.

THIS is a suit for mandamus, and grew out of an effort to re-locate the county seat of Alamakee county. It was originally brought in that county by L. O. Hatch, Esq., against the defendants, but was afterward taken by change of venue to Delaware county, and, by order of court, the State of Iowa was substituted as plaintiff. Upon the final trial a peremptory mandamus was awarded,

and from that judgment both parties appeal. A motion is made in this court to dismiss the defendant's appeal. It will conduce to perspicuity to state the facts relating to each proposition separately, and they will be found stated in the opinion.

*L. O. Hatch* and *Richard Wilbur* for the plaintiff.

*Bissell, Shiras & Ballou* for the defendants.

COLE, J.—I. *As to the motion to dismiss the defendant's appeal.* The suit is brought against the individuals,
1. PRACTICE: by name, composing the board of canvassers,
interference they being also the supervisors of the county.
of nominal
party: board A portion of the defendants filed their answer
of super-
visors. to the plaintiff's original petition, admitting the material facts as alleged, but denying that they had contributed, by their votes or conduct, to the doing of the acts of which the plaintiff complained. A majority of the board of canvassers, however, filed their answer, denying a part of the allegations of the petition, avoiding others by affirmative matter, and contesting generally the claim of plaintiff.

Since this suit was brought (April, 1865), the term of office of several of those supervisors, constituting that majority, has expired; and the persons elected as their successors seem to entertain different views or wishes upon the question of relocation of the county seat. The board of supervisors, which is, *ex officio*, the board of county canvassers, as constituted after the changes aforesaid, contains a majority favorable, doubtless, to the plaintiff's claim; at all events, the board of supervisors pass resolutions expressive of their willingness to abide the decision of the District Court, and appoint new counsel to dismiss the defendants' appeal. The counsel thus appointed, appear in this court, and file a motion for

the defendants to dismiss accordingly. This motion is resisted by original counsel for the defendants, contesting the plaintiff's claim.

The motion to dismiss must be overruled. The real parties in interest in this case are, on the one hand, those interested in the relocation of the county seat at Waukon; and, on the other hand, those interested in retaining the county seat at its present location, the point between Capoli and Lansing. These real parties in interest are respectively represented in this record by the State of Iowa, on the one hand, and by the then board of canvassers on the other. The Attorney-General, who is authorized to represent the State of Iowa as a party to suits in this court, ought not to be permitted to enter his appearance for the State, and confess the errors assigned, or dismiss the appeal in this case. And this, not because he is not authorized to appear for the *State*, but because the State is a nominal party only; and the suit is permitted to be conducted in its name for the benefit of the real parties in interest. When those parties in interest are manifest to the court, as in this case, and ask for a full and fair adjudication of their rights, the court will look to substance rather than to form, and protect the real parties against the follies or frauds of the nominal.

So also of the defendants: they, through the majority of their board of canvassers, stand for and represent the real parties in interest, as to the defense. The matter of relocation of a county seat is, under our statute, one for the people of the county to decide by direct vote upon that question. It is isolated, and purposely and wisely kept from complication with politics, or the merits or demerits, popularity or unpopularity, of individual candidates for local or general offices. But, if, by the aid of the personal or political influence and popularity of candidates for supervisors, individuals are elected to that office

VOL. XXII.—44

whose views or interests are adverse to the public will on the question of relocation of county seats, as shown by their direct vote, and such persons, so elected, are allowed, by their interference with litigation or otherwise, to defeat that will, all or many of the guards of the statute are overridden and frittered away. In other words, the question of relocation of county seats would depend upon the election and action of the board of supervisors, instead of the direct vote and will of the people. To adhere to mere forms or names, and thus and thereby to defeat the plain letter of the law and the fair administration of justice, would be to disregard and sin against the light of ancient as well as modern jurisprudence. It has always been held that, where a party in interest was allowed to use the name of another for the enforcement of a right, the court would protect such party from all improper interference by the person whose name he was allowed to use.

II. *As to the returns from the three townships of Post, Paint Creek and Linton.*—The county of Allamakee has

2. COUNTY SEAT: vote for removal: variation in name. eighteen political townships. As to the returns from fourteen of them, there is no controversy whatever. The aggregate vote in these townships was ten hundred and sixty-eight for the present county seat, the point between Capoli and Lansing, and eight hundred and eighty-two for Waukon, the proposed location. As to the three townships now under consideration, Post, Paint Creek and Linton, the poll-books, as returned to the board of canvassers, showed that an aggregate of two hundred and fifty-four votes were for Waukon, and one hundred and thirty-seven for *Lansing*, not "The point between Capoli and Lansing." These votes were counted by the board of canvassers for "The point between Capoli and Lansing." The District Court held that the board did right in so counting them;

and it is from this ruling that the plaintiff appeals. The following facts are proven in the case as in aid of a correct determination of this question, to wit: There are two towns or villages — Lansing and Capoli — lying not far apart; between them are two other towns — South Lansing and North Capoli. The plats of the two last named join, as does the plat of the latter, its namesake; while between Lansing and South Lansing there is a strip of land about sixteen rods wide, which is not included in either plat, and on which is situated a steam mill. The court-house stands on the line between South Lansing and North Capoli, about half in each, but wholly in the political township of Lansing. The county seat was located where it is under the designation of "The point between Lansing and Capoli," and by this name has been recognized in the proceedings for relocation, although it is usually known by the name of Lansing.

The ballots cast by the voters in these three townships are also in evidence, and those which are returned by the judges of the election as being for "Lansing," were in fact for "The point between Lansing and Capoli."

Since the county seat, as now located, is known by two names — one, "The point between Lansing and Capoli," its legal and technical name; the other, "Lansing," by which name it is usually spoken of — it was no improper exercise of ministerial power on the part of the canvassers, to count the returns made for Lansing, as for "The point between Lansing and Capoli;" and it was not error, therefore, in the District Court to refuse to direct the canvassers to count these votes for Lansing, and not for "The point between Lansing and Capoli." Especially is this so, since it is indisputably shown that the ballots were actually cast for the latter. The judges of election, recognizing the fact that the place had two names, made their returns in the name it was usually spoken of; while

the canvassers, recognizing the same fact, counted them under the technical name used by the voters on their ballots. To hold that, for this reason, the clear will of the people should be defeated, would be to exalt *names* above *substance*, supposed *technical law* above *justice* and the right. This we cannot do.

III. *As to the returns from Franklin township.* We have found that in the seventeen townships already

**3. ELECTION: return: canvassers.** considered, the point between Lansing and Capoli received twelve hundred and five votes, and Waukon eleven hundred and thirty-six votes. The plaintiff claims that, in the township of Franklin, there were one hundred votes cast for Waukon, and eight votes for the point between Lansing and Capoli, so that if the votes from Franklin are counted, it would change the result, and give to Waukon twelve hundred and thirty-six votes, and to the point between Lansing and Capoli twelve hundred and thirteen votes, or twenty-three majority for the former. The District Court, by the mandamus awarded in the judgment, directed the board of canvassers to count the votes or returns from Franklin, as above claimed by the plaintiff, and from this order the defendants appeal.

The testimony discloses the following facts, to wit: The judges and clerks of the election in Franklin township, made a regular, full and formal return of all the votes for the different officers voted for at the election, which return was made upon the blank leaves of the poll-book, duly signed by the judges and attested by the clerk. They also made a return upon a separate sheet, or piece of paper, as follows:

" Co. Seat.

" The point between Lansing and Capoli, ||||| |||   ...    8
" Waukon,        ||||| ||||| ||||| ||||| ||||| ||||| ||||| ||||| ||||| |||||
                ||||| ||||| ||||| ||||| ||||| ||||| ||||| ||||| ||||| |||||   ...  100

"Co. Seat.

"Point between Lansing and Capoli.............. 8

"For the county seat at Waukon................ 100"

This separate paper was not signed by any one, but was in the handwriting of one of the clerks of election, and the same as the other returns. It was made for a return, as to the county seat question, and was put in the poll-book and sealed up with it and delivered to the supervisor for that township. This poll-book, with the paper inclosed, was duly delivered to the board of canvassers. The members of the board examined the poll-book, but failed to discover the loose paper containing the county seat returns.

The poll-book was then put into the hands of the sheriff, who sent it by his deputy back to the judges of election in Franklin to obtain the returns on the county seat question. The poll-book was handed, by the sheriff in Franklin township, to the clerk of the election who had written the returns, and he, in the presence of one of the judges of the election, the sheriff and others, opened the poll-book and found in it the loose paper containing the returns on the county seat question just where he had placed it before sealing and delivering it to the supervisor.

The clerk then, in the presence of the same persons, wrote out the return in full on the county seat question, in the proper place, over the signatures of the judges and clerks, as they were affixed to the original certificate of return on the poll-book when first sealed and delivered to the supervisor. He then again placed the loose paper in the poll-book and handed it to the sheriff, who returned the same to the board of canvassers, who were still in session.

The record does not show any action, by the board of canvassers in relation to this return. They did not in fact count the returns from Franklin township, and, by

reason thereof, found and so declared, that Waukon had not received a majority of the votes cast, etc.

In view of these facts, as we find them proved, we have but little hesitation in holding that the returns from Franklin township should have been counted, and, as a consequence, that there was no error in the judgment of the District Court in making a peremptory mandate that it should now be done.

Such counting is but the giving a full, fair and legitimate expression and execution of the will of the people as legally manifested. The leading objection to the making of the order to count the returns is based upon the ground that the board of supervisors could not know from the face of the alleged return on the loose paper, that it was an official return, because it was unsigned and not annexed to the poll-book; and further, that the board could not have proof, *aliunde*, to show that it was a return of the vote on the county seat. And it is also insisted that the writing of the returns by the clerk over the signatures already affixed, could not be a return, because it was not, in fact, seen or approved by all the judges and clerks, and was done after the time at which it was their legal duty or right to do it.

These objections are so broad as to neutralize each other. If the board had no power to ascertain facts *aliunde*, showing that the loose paper was a return (which we do not controvert or decide), neither did it have the power to ascertain facts *aliunde*, showing that the return, as written out in full over the signatures of the judges and clerks, was written after the proper time or without the authority or approval of the officers whose names appear as signers thereof. They had two returns before them; one was on its face informal and unauthenticated; the other was formal and on its face duly authenticated. If the board had no power to hear proof to establish the one,

neither did it have power to hear proof to defeat the other. They must take one horn or the other of the dilemma; and taking either, their action was not authorized.

The judgment of the District Court is therefore affirmed. Both parties failing in their appeal, each will pay one-half of the costs in this court. Affirmed.