Hughes v. Parker.

---

J. W. F. HUGHES *et al.* v. ALBERT PARKER *et al.*

No. 12,655.   (65 Pac. 265.)

SYLLABUS BY THE COURT.

<div style="float:right">

| 63 | 297 |
| 64 | ·217 |
| 63 | 297 |
| 65 | 844 |

</div>

1. CITIES AND CITY OFFICERS—*Elections— Tally-marks Control the Result.*   Under sections 10 and 11, chapter 206, Laws of 1889 (Gen. Stat. 1901, §§ 709, 710), and section 82, chapter 37, Laws of 1881 (Gen. Stat. 1901, § 829), tally-marks of the votes for candidates for office in cities of the first class are required to be made by the clerks of election, and returned to the city council, as the canvassing board, as part of the returns of the election; and, in case of a discrepancy between such tally-marks and the certificates of total votes for the candidates made by the election officers, the former control, and require a declaration of the result to be made in conformity therewith.

2. ELECTIONS— *Mandamus Ordering New Canvass.*   Mandamus will issue only upon a showing of clear legal right; therefore, a canvass of the returns of an election made by a canvassing board, which returns are ambiguous, uncertain, and difficult to understand, will not be ordered to be made anew, and a different result announced, upon an inspection by the court of the same returns.

3. ——— *Individual Members of Canvassing Board may Appeal from Order of Mandamus.*   While a board of election canvassers is an official entity, and a canvass of election returns made by it is the act of the board and not the separate acts of the individuals composing it, yet an order of the court, requiring the board to canvass a vote and declare the result in accordance with a certain rule laid down for its guidance, may be appealed from by an individual member of the board.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed June 8, 1901. *In banc.* Reversed.

*Garver & Larimer, Redden, McKeever & Hayden,* and *F. P. Lindsay,* for plaintiffs in error.

*G. C. Clemens, Ferry & Doran,* and *David Overmyer,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action of mandamus to compel the canvass of a vote for mayor and the issuance of a certificate of election. The peremptory writ was allowed by the court below, and from the order of allowance this proceeding in error has been instituted. Albert Parker and J. W. F. Hughes were candidates for the office of mayor of the city of Topeka at the biennial election of 1901. The city council, as the canvassing board, declared Hughes elected by a majority of nine votes. In making this canvass, the council took into account not only the declared result of the election, as certified by the judges and clerks of the various voting precincts, but also the tallies, or markings, made by the election clerks of the various precincts, as the ballots were taken out and counted. There were discrepancies in two precincts between the result as certified by judges and clerks and the count as shown by the clerks' tallies. In one of these precincts the tallies showed less votes for Parker than the number certified for him by the election officers ; in the other the tallies showed a greater number of votes for each candidate than the number certified by the election officers ; but the aggregate count of the tallies in the two precincts showed a majority in favor of

Hughes v. Parker.

Hughes, while the result as certified by the election officers showed a majority for Parker.

A material question, therefore, is whether the canvassing board should have been governed by the certified result, or whether it was at liberty to examine and count the tally-marks as well. It is contended by the plaintiff in error that the latter may be done, while the defendant in error contends that the result of the vote, as determined and certified by the judges and clerks of election, is controlling. This latter view was taken by the court below, but a majority of us are constrained to think it erroneous.

1. Tally-marks control in announcement of result by canvassing board.

In *Rice v. County Board of Canvassers*, 50 Kan. 149, 32 Pac. 134, the same question was presented and considered, but not decided, in view of other features of the case. Some of the language of the opinion in that case indicates the view that the tally markings are a part of the legal returns made to the canvassing board, and, therefore, should be considered by it. However, the election in question in that case was held under the general election law for state, district and county officers, and not for city officers, as was the case of the election now under consideration. The general election law for state, district and county officers (Gen. Stat. 1901, §§ 2584–2586) provides for the keeping and return of tally-sheets of such elections. In the case cited, it was noted that the decisions as to whether the tally-marks may be examined by the board of canvassers were at variance, but that the weight of authority was in favor of allowing them to be considered in verifying election returns, and also in favor of giving them controlling force in case of a discrepancy between them and the certified result. In our judgment this is the better rule, because the tally-

marks are made concurrently with the count of the vote, and are, therefore, the original and primary evidence of such vote, the certificates of totals being compiled secondarily. Therefore, if the statutes governing elections in cities provide for the making of a tally-sheet and its return to the board of canvassers, the action of the canvassers in the present case should be upheld. Elections in cities of the first class are regulated in greater part by chapter 206, Laws of 1889 (Gen. Stat. 1901, §§ 700–716). In connection with this statute, a provision of chapter 37, Laws of 1881 (Gen. Stat. 1901, §§ 717, *et seq.*), is to be considered. None of the provisions of the "Australian-ballot law" seems to have application to the case. We think that all the statutory provisions material to be noted are as follows :

"The city council shall be the board of canvassers, and shall meet on the first Friday after the election, to canvass the vote, and the returns of the election shall be made to the city clerk before that time, and by him presented to the board of canvassers. The persons receiving the highest number of votes for the various offices to be filled shall be declared elected, and shall receive a certificate of election under the seal of the city, signed by the mayor and clerk." (Laws 1881, ch. 37, § 82; Gen. Stat. 1901, § 829.)

"The judges and clerks of election in every precinct, as soon as the ballots have been counted and tallied and the clerks have ascertained the number tallied for each candidate, shall make out and certify a summary statement of the number of votes cast therein, and the number counted and tallied for each candidate, and dispatch the same by a special messenger sworn for that purpose, and in a sealed envelope, to the commissioner of elections at his office. The judges of election shall also, as soon as the result has been ascertained, announce it to the commissioner

of elections from the nearest police or fire station, or from a telegraph or telephone station if nearest to them. At the request of any of the persons designated to witness the counting of the ballots, the judges and clerks of election shall also sign and deliver to him a certificate containing the same statements as required to be made to the commissioner of elections.". (Laws 1889, ch. 206, § 10; Gen. Stat. 1901, § 709.)

"The board of elections shall convene in session at their office at seven o'clock P. M. on the day of every election in such cities, and remain in session continuously until the statements giving the result of the election, as required above, shall have been received from every precinct in such city by the commissioner of elections and laid before said board. The board shall have power to employ messengers, to use the telephone and telegraph, direct the police force of the city, and use any other lawful means to secure prompt and correct reports from the election judges as above required." (Laws 1889, ch. 206, § 11; Gen. Stat. 1901, § 710.)

It will be observed that none of the sections above quoted provides in terms for the keeping of a tally-sheet by the clerks of the election, and it will be observed that none of them provides for the transmission of the election returns from the election officers to the board of canvassers, and it is conceded by counsel on both sides that there are no statutory provisions which in terms direct how, or by whom, returns of city elections shall be laid before the board of canvassers. It is, however, conceded by counsel on both sides that the election returns in question did properly get before the board of canvassers; and we are, therefore, relieved from a consideration of the regularity of the proceedings in that respect; but the question, What are election returns in a city of the first class? still

remains.   We are constrained to think that, under
section 10, above quoted, the keeping of a tally-sheet
at a city election is a legal requirement, and, being
such, that it constitutes a part of the election returns.
The section declares that "the judges and clerks of
election in every precinct, as soon as the ballots have
been counted and *tallied*, and the clerks have ascer-
tained the number *tallied* for each candidate," etc.
This language implies, of necessity, that tallies are
to be kept and a tally-sheet made up by the clerks.
The  general election law — the law governing all
other elections — provides for tally-sheets and for their
transmission to the board of canvassers as a part of
the official returns of the election.   The statute above
quoted presupposes the necessary and legally re-
quired use of the same kind of tally-sheets for the same
purpose.   It cannot, with reason, be said that the
use of a tally-sheet at a city election is a mere conven-
ience — is a mere matter of clerical memoranda — while
the law requires it at all other elections for purposes
of an official record.

It is contended, however, that sections 10 and 11
above quoted provide what shall constitute the re-
turns of a city election, and that they make no pro-
vision for the return of a tally-sheet.  Those sections do
not seem to provide for the making out by the clerks
and judges of the election of anything but a "summary
statement of the number of votes cast therein, and
the number counted and tallied for each candidate,"
but we do not regard such summary statement as be-
ing the election return.   It is not the election return,
because there is no provision for laying it before the
board of canvassers.   Another body, called the board
of elections, is appointed to receive the "summary
statement."   This board of elections, the composition

of which is provided for by other sections, is required
to convene at seven o'clock on the day of election
and to remain in session continuously until all the
summary statements, giving the results of the election
from the various voting precincts, shall have been de-
livered to it.  The delivery of these summary statements
to the board of elections is required to be made immedi-
ately after the canvass of the vote in the various pre-
cincts, and to be dispatched by a special messenger,
sworn for that purpose.   The statute is silent as to
what the board of elections shall do with the summary
statements when received by it.   No provision is made
for sending them by the board of elections to the board
of canvassers as the official returns of the election.
Provision is made for their filing with the board of
elections, but the statute goes no further.

   An examination of sections 10 and 11, above quoted,
leads, we think, to the conclusion that they were sim-
ply designed to provide checks and hindrances to the
tampering with election returns or the perpetration
of fraud after the election.   They provide for the im-
mediate making out, and certification by the election
officers, of a summary statement of the number of
votes.   They provide for an immediate dispatch of
such statements by a sworn messenger, in a sealed en-
velope, to the commissioner of elections.   They pro-
vide for an official announcement of the result of the
election  earlier than the sending of the summary
statements.   That announcement is to be made from
the nearest police, fire, telegraph or telephone sta-
tion, and they also provide for the furnishing to in-
terested persons of a copy of the summary statement
forwarded to the election board.   They provide for an
immediate session of such board to receive the elec-
tion returns forwarded in the several ways above

mentioned, and they provide for a continuous session of the board until all the statements have been received, and the board is authorized to employ messengers and to use the telephone and telegraph, direct the police force, and use any other lawful means necessary to secure prompt and correct reports from the election judges. All of these provisions look to the early ascertainment and early announcement of the result, and the making up of safeguards and checks against the fraudulent tampering with election returns, rather than to the making of returns to the canvassing board, or to the making of them in the form required for use by the canvassing board.

But, if the summary statements made to the board of elections be not the returns on which the canvass is made, from whom, or in what way, then, does the canvassing board receive the returns on which it acts? We think the statute, *ex proprio vigore*, directs the transmission of the returns by the election officers to the board of canvassers. An election is held. Officers to conduct it and to tabulate and declare the vote are provided. Other officers are provided to canvass that vote. Does it need a statute declaring that the first set of officers shall transmit their official data to the last set of officers? Is not their duty to do so implied, of necessity, from the nature of the several acts to be performed? We think it is, and that the election returns were rightly transmitted from the judges and clerks to the city clerk as the clerk of the board of canvassers; we think that section 10, above quoted, provides for the making up of a tally-sheet as a part of the official election returns; we think that such tally-sheet may be used to verify and correct the declared result of the judges and clerks; and we think that the summary statements provided by sections 10

and 11 are in the nature of checks and safeguards against fraudulent practices, and that they do not constitute the returns of the election on which the canvass of the vote is to be made.

The case was determined by the court below after an inspection by itself of the tally-sheets and certified totals, together with some explanatory evidence. The court made findings, of which the following are material to be noticed :

"10. Upon the tally-sheets returned from the election precincts and which were placed in the hands of said city clerk there appeared to be entered and marked the number of tallies as shown in the following schedule, to wit :

"In the first precinct of the second ward,
Opposite the name of J. W. F. Hughes, . . . . . 127
Opposite the name of Albert Parker, . . . . . . . 327
"In the third precinct of the third ward,
Opposite the name of J. W. F. Hughes, . . . . . 646
Opposite the name of Albert Parker, . . . . . . . 222

"But on account of the condition of said tally-sheets the court is unable to make a definite finding as to the exact number of tally-marks which were in fact made upon said tally-sheets, as intended to be counted for each candidate for mayor.

"11. In the tally-sheet described herein which was kept at the first precinct of the second ward, the name of Albert Parker, as a candidate for mayor, appears, with the names of other candidates for various offices, in a certain place upon said sheet. Immediately opposite the name of Albert Parker, and in the first square thereafter, there are three perpendicular marks and one diagonal or tally-mark. Upon and over the name of Albert Parker and said other candidates for various offices in the place referred to there is drawn a heavy cross-mark, showing that it was the intention of the clerk making said tally-sheet to erase or obliterate that part of the tally-sheet. But the court is unable to say whether the votes indicated by the four

tally-marks standing opposite to the name of Parker, thus erased and obliterated, were carried into any other part of said tally-sheet where the name of Parker and said other candidates for various offices are entered.

"This tally-sheet is reasonably well kept and is not ambiguous or unintelligible, so far as the pen work thereon is concerned, and is as well kept as could be expected, in view of the haste and the conditions surrounding the counting of the votes and the making of the returns.

"12. The tally-sheet described herein and which was kept at the third precinct of the third ward was made and prepared by a person inexperienced in the use of the pen and wholly unaccustomed to the performance of clerical work, and is badly blurred and blotted, and the tally-marks overlapped, retraced, or joined together in such a way as to make it very difficult to determine exactly how many tally-marks were in fact made thereon. But the court is of the opinion that the number of tally-marks actually made thereon is as set out in finding No. 10.

"12-A. In some of the squares ruled upon said tally-sheets, as described in finding No. 9, there are only two tally-marks; in others, three tally-marks; in others, four tally-marks; in others, five tally-marks; and in others, six tally-marks."

From these findings, it appears that the tally-marks are uncertain, ambiguous, and difficult to understand. Such being the case, our judgment is that the court's findings failed to show a case for the exercise of that judicial discretion which is an essential element of the law of mandamus. If, on account of the condition of the tally-sheets, the court was, to quote the language of one of the findings, "unable to make a definite finding as to the exact number of tally-marks which were in fact made on the said tally-sheets, as

2. Mandamus will issue only upon a showing of a clear legal right.

intended to be counted for each candidate for mayor,"
it would appear then that the plaintiff below, the de-
fendant in error here, did not show that clear legal
right to the extraordinary writ of mandamus which
the law requires.

"The writ of mandamus being justly regarded as
one of the highest writs known to our system of juris-
prudence, it issues only where there is a clear and
specific legal right to be enforced, or a duty which
ought to be and can be performed, and where there is
no other specific and adequate legal remedy.   The
right which it sought to protect must therefore be
clearly established, and the writ is never granted in
doubtful cases."   (High, Extr. Leg. Rem. §9.)

That the plaintiff's showing of legal right was not
clear, and, therefore, that the writ should not have
been allowed to him, is said in view of the ruling just
made that the tally-marks may be examined, and,
in cases of discrepancy, may control the certificate of
totals.   In that view of the case, the board of can-
vassers was as well qualified to examine the tallies
and declare a result therefrom as was the court below,
and, unless the tally-marks clearly showed that the
board of canvassers was in error, and that the plain-
tiff was entitled to the writ because the tallies showed
he had received the greater number of votes, the dis-
cretion of the court below to award the writ should
have been differently exercised ; and, more than that,
from the tally-sheets incorporated in the record, it
appears that, taking the footings in all cases where
there can be any doubt as to what the tally-sheets
show, and admitting them to prevail, we find that a
clear error is made in one such sheet in the addition
of the tallies to such extent that the result of the elec-
tion, as found by the compilation of the footings, is
changed.   However, it is due to the court to say that,

while it made findings of fact from which the inference may be drawn that it took into account the tally-marks, its judgment seems to have been rested upon the legal proposition that the tally-marks constituted no part of the election returns, and that the certificates of totals could alone be examined to determine the result.   This, we think, was error.

Objection is made in this court to our right to review the case, because some of the members of the city council, made defendants in the court below, have refused to join as plaintiffs in error to this court. In fact, as the defendants in error claim, a minority only of the defendants in the court below join in the prosecution of the proceeding in error. It is true that a board of election canvassers acts as an entity.   The canvass is the act of the board and not the separate or separable act of the individuals composing it. However, it by no means follows that an individual member of the political entity who has been commanded to make a canvass—who has been commanded to take part in a canvass—may not appeal in his individual right from the order made on him. The duty to make the canvass, although a duty performed by the board as an entity, is nevertheless a duty which is laid upon the conscience and judgment of each individual member composing the board.   It would be intolerable to refuse to an individual member of such board who has been commanded to take part, along with his fellows, in the canvass of a vote, or in its canvass according to some legal rule laid down to him, the right to appeal from the order which his conscience would not permit him to obey, or which, in his judgment, was erroneous.

3. Individual members of canvassing board may appeal from order of mandamus.

The judgment of the court below is reversed, with directions to deny the peremptory writ.

JOHNSTON, CUNNINGHAM, GREENE, ELLIS, JJ., concurring.

SMITH, POLLOCK, JJ., dissenting from first paragraph of syllabus and corresponding portion of opinion.

DOSTER, C. J. (dissenting) : I dissent from the foregoing opinion. In my judgment, the returns of a city election consist solely in the summary statements provided by sections 10 and 11, chapter 206, Laws of 1889. (Gen. Stat. 1901, §§ 709, 710). I am of the opinion that, under the general law for the election of state, district and county officers, the tally-sheets constitute a part of the election returns. As to whether, under such election law, the tally-sheet or the verified totals are controlling, I have formed no opinion, nor would an opinion on that question be material in the determination of the one now before us. Our question relates to the returns of city elections and not to returns of general elections. The statutes are different. The statute providing for city elections does not, in terms, provide for the keeping of tally-sheets. I concede the proposition of the majority, that the statute, of its own force, carries the election returns to the board of canvassers, and that an express direction so to carry them is not necessary, although proper, indeed, to the perfect symmetry of the election law. I do not concede, however, that the statute, of its own force, carries the election returns from the judges and clerks of election directly to the board of canvassers. The statute provides for the making up of summary statements by the judges and clerks. Unquestionably these statements are evidences of the result of the election. Inasmuch as the statute, *ex*

*proprio vigore,* carries the returns, whatever the returns may be, to the board of canvassers, why not as well say that the statute carries those returns from the board of elections which, as we see, officially receives them from the judges and clerks, as to say that it carries them from the judges and clerks past the board of elections to the board of canvassers?

The statute provides for the making up of summary statements as evidences of the result of the election. It does not provide for sending those statements to the board of canvassers. It does provide for sending them to the board of elections. Why not say that the board of elections, by force of the statute, in turn transmits them to the board of canvassers? So, on the other hand, if it cannot be said that the statute carries the election returns from the judges and clerks through the board of elections to the board of canvassers, but that it carries those returns from the judges and clerks directly to the board of canvassers, why not say that it carries to such board of canvassers the only thing which the statute requires in terms shall be made up, to wit, the summary statements of the result? The majority of the court presuppose the legal requirement to keep a tally-sheet from the fact that the statute says that summary statements shall be made out and certified "as soon as the ballots have been counted and *tallied* and the clerks have ascertained the number *tallied* for each candidate." I might from this language concede the legal requirement to keep a tally-sheet, and I might, except for other provisions of the statute, concede the legal nature of this tally-sheet as a part of the returns; but the statute seems to require the keeping of the tally-sheet only for the purpose of the preparation of the summary statements, and the summary statements

are all that the statute requires to be made out and returned to any person.

To my mind there are cogent reasons why, independently of statutes to the contrary, the certified totals of the election officers should alone be considered the legal returns of the election. There is far less opportunity between the closing of the polls and the canvassing of the result to forge a certificate of an election officer than there is to tamper with a tally-sheet. Tallies are pen markings made opposite the names of the candidates, for the purpose of keeping the account of their votes as the ballots are taken out of the box. It is easy, indeed, to add a few tallies to the vote of a candidate, and it is easier to efface a few tally-marks by the use of chemicals than it is to erase the figures of a candidate's total vote contained in the judge's certificate and to write in a different number. Besides, the rule announced by the majority of the court makes the certified totals of no account whatever in case of a discrepancy between them and the tally list. It was well said by counsel for defendant in error in argument:

"If tally-sheets are to be considered at all, they must inevitably control. They are to be considered for the sole reason that there is a discrepancy between them and the certificates. Considering them is precisely what creates the discrepancy. The discrepancy having been thus revealed, how is it to be corrected? If they are to correct the certificate, then they are the principal part of the returns; for otherwise why should not the certificate correct the tallies? But no court will say so. The very fact that the certificate is taken as the basis, *unless* the tallies disagree with it, shows a latent consciousness that certificates should be the principal thing. Why not say the tallies are to be taken *unless* there is a discrepancy between *them* and the certificates? No court puts it this way.

Counsel themselves do not put it this way. Everybody concedes that *the certificates* are to be accepted, unless the tallies reveal a discrepancy. The very proposition advanced betrays the conviction of courts and of counsel that *the certificates* are the *returns*. All that is claimed is that in case of discrepancy between them the tallies may be *considered* in connection with these returns.''

The learned judge of the court below in his decision of the case filed a written opinion which, in my judgment, entirely covers the ground, and leaves but little, if anything, to be said in defense of the proposition that, under the statute we are considering, only the certificates of the election officers can be examined by the canvassing board. I content myself with subjoining the greater portion of that opinion, as expressing the views I entertain :

''Section 82, chapter 37, Laws of 1881 (Gen. Stat. 1901, § 829), which is the city-charter act, contains the following provision :

'' 'The city council shall be the board of canvassers, and shall meet on the first Friday after the election, to canvass the vote, and the returns of the election shall be made to the city clerk before that time, and by him presented to the board of canvassers.'

''This statute is still in force, and, while it provides that the returns of the election shall be made to the city clerk, it does not provide by whom such returns shall be made or of what they shall consist. We have been unable to find any statute which provides by whom the returns shall be made to the city clerk. But this question is not important in the present case, because both the alternative writ and the return thereto aver that the returns were duly made to the city clerk. Under this state of the pleadings, and for the puposes of this case, the court must assume that at the time of the alleged canvass of which the plaintiff complains the returns were properly and legally in the possession of the city clerk. It is, there-

fore, not important in this case to inquire how such returns got into his possession.

"The important question presented for decision is, What constitutes the election returns of an election

1. What are election returns?

in a city of the first class having a commissioner of elections? Do the tally-sheets kept by the clerks of election constitute any part of such returns?

"Chapter 206, Laws of 1889 (Gen. Stat. 1901, §§ 700–716), being the commissioner-of-elections law, provides that where the metropolitan-police law is in force the commissioner of elections and the police commissioners shall constitute a board of supervisors of elections, of which the president of the board of police commissioners shall be president and the commissioner of elections shall be secretary, and that such board of supervisors shall have full and complete control of all elections. In a city where the metropolitan police law is not in force and such city has a commissioner of elections, then it is his duty to appoint one councilman from each ward, who, with him, shall constitute a board of supervisors of elections, and whose duties shall be identical in every respect with those prescribed for such supervisors where the metropolitan-police law is in force. Section 8 of this law makes it the duty of the commissioner of elections to furnish to the judges of each voting precinct a poll-book containing the names of the persons entitled to vote at that precinct according to the registration. Section 9 provides that one of the judges at the voting precinct shall enter upon his poll-book, opposite the name of each person, as he votes, the word "Voted," and that this poll-book must be returned to the commissioner of elections and by him preserved. This poll-book, if correctly kept, will show the number of persons voting and the name of each voter. This statute further provides that the board of supervisors, which, in this city, would consist of the commissioner of elections and one councilman from each ward, shall meet at the office of the commissioner of elections at seven o'clock P. M. on the day of elections, and remain in session continuously until the statements giving the result of

the election shall have been received from every precinct in the city and laid before such board. This board is authorized to employ messengers, use telephone and telegraph, direct the police force of the city, and use any other lawful means to secure prompt and correct reports from the election judges.

"The commissioner-of-elections law further provides that, as soon as the ballots have been counted and tallied and the clerks have ascertained the number tallied for each candidate, the judges and clerks shall make out and certify a summary statement of the number of votes cast therein and the number counted and tallied for each candidate, and dispatch the same by a special messenger, sworn for that purpose, in a sealed envelope, to the commissioner of elections, at his office. The judges of election shall also, as soon as the result has been ascertained, announce it to the commissioner of elections from the nearest police or fire station, or from a telegraph or telephone station, if nearest to them. At the request of any of the persons designated to witness the count of the ballots, the judges and clerks of election shall also sign and deliver to him a certificate containing the same statements as required to be made to the commissioner of elections. This summary statement of the number of votes cast seems to be the only return provided for. There is nothing in this law requiring the keeping of any tally-sheets, or making return thereof to either the commissioner of elections or the city clerk.

2. Provisions of commissioner law.

"Where a certain kind of a return is required to be made and the manner of making it is provided for, and the statute is silent beyond that, then the return required to be made is the only return which the law will recognize.

"The Australian-ballot law provides that in all city elections the city clerk shall have charge of the printing of the ballots and of the letting of the contract therefor, and shall cause to be delivered to the judges of election, not less than twelve hours before the time fixed by law for the opening of the polls, seventy-five ballots for each fifty names on the registration books

Hughes v. Parker.

of persons entitled to vote at that precinct.   This same law provides that all ballots not used and all that have been spoiled by the voter while attempting to vote shall be returned by the judges of election to the officer from whom they were received, and that the ballots voted at that precinct shall also be returned to such officer in a sealed envelope.   Under this law, it is made the duty of the judges to return to the city clerk all ballots not used, together with those spoiled, and also the ballots which have been voted.   But there is no provision for the making of any return to the city clerk other than the delivery to him of the ballots.

"Taking and considering these statutes together, we have provision for the return of the ballots to the city clerk, for the return of the poll-book to the commissioner of elections, and for the return of a summary statement of the number of votes cast and the number counted for each candidate to the commissioner of elections and the board of supervisors; but we are unable to find any statute authorizing the return of any tally-sheets, or to find any statute expressly requiring the keeping of any tally-sheets at a city election in a city of the first class having a commissioner of elections.   The supposed authority or necessity for keeping a tally-sheet can only be inferred, as a matter of convenience to the election board in keeping the count for the purpose of announcing the result.

3. Tallies not considered.

"At the time of the canvass in controversy, the question arose before the canvassing board as to whether the tally-sheets in possession of the city clerk should be considered in making the canvass.   The testimony showed that there were discrepancies between the certificates of the judges and the tally-sheets in the two precincts in question, and it further showed that where such discrepancy arose the canvassing board accepted the tally-sheets as against the certificate of the judges, made the canvass, and arrived at the result upon that theory.   If the tally-sheets are not part of the returns, then the board of canvassers would not be authorized to take them into consideration in making the canvass; and, if the certifi-

cates of the judges in the hands of the clerk were the returns contemplated by law, then the canvassing board should have accepted such certificates as controlling and made the canvass accordingly.

"It is urged on behalf of respondents that under the case of *Rice v. County Board of Canvassers*, 50 Kan. 149, 32 Pac, 134, the tally-sheets are a part of the returns

4. Cases not parallel.

of the election and should be considered in making the canvass. In that case the question was discussed as to whether the tally-sheets were a part of the returns, but that question was not decided. Mr. Justice Johnston, who wrote the opinion, cited the authorities bearing on this question, and expressed as his view that the tally-sheets are a part of the returns. But it must be remembered that the returns in question in that case were the returns at a general election, and, therefore, were governed by the general election laws. Section 1 of chapter 36 of the general election law of 1868 (Gen. Stat. 1901, § 2567) provides that 'all elections hereafter to be held for state, district and county officers shall be held and conducted in the manner prescribed in this act.' Section 21 (Gen. Stat. 1901, § 2584) of the same law provides that "the clerks shall enter in a column, under the names of the persons voted for, as hereinafter provided in the form of the poll-books, all the votes as declared read by the judges." Section 25 (Gen. Stat. 1901, § 2585) provides that "the following shall be the form of the poll-books to be kept by the judges and clerks of election held under this act." Then follows the form of the poll-book to be used, and in this form there is a tally-sheet provided for, and it is thereby made a part of the poll-book. It was this kind of a tally-sheet that was before the supreme court in the case above cited. Section 26 (Gen. Stat. 1901, § 2586) provides for the sending of one of these poll-books, under seal, to the county clerk, and the other to the township trustee. A canvass by the county commissioners is then made from this poll-book, which, by statutory requirement, contains the tally-sheet; and under these statutory provisions I am impressed with the views expressed by Mr. Justice

Johnston.   And yet, in his opinion, he recognizes the fact that upon similar statutes the courts of other states have disagreed.

"But if the statutory provisions relating to general elections do not apply to city elections, and in the city-election laws there is no provision for the keeping or returning of a tally-sheet and no law by which it is made a part of the poll-book, no form prescribed, it seems clear that the courts would hold that the tally-sheet found with the returns in a city election should not be considered as a part of the returns.

"It does not seem that the legislature, after having provided all these various methods of obtaining prompt and correct returns in city elections during the session of the board of supervisors, could have intended that the express statutory provisions could be overthrown or controlled by a recount of the tallies made upon a tally-sheet, where no express provision is made in law for the keeping of such tally-sheets in such elections, or for their return to any officer."