[Civ. No. 1255.   Second Appellate District.—November 21, 1912.]

THE PEOPLE, ex rel. R. F. DEL VALLE and MARY E. FOYE, Petitioners, v. SIDNEY A. BUTLER et al., Constituting the Board of Supervisors of the County of Los Angeles, and H. J. LELANDE, County Clerk, Respondents.

MANDAMUS—ORIGINAL PROCEEDING IN APPELLATE COURT—DUTY OF BOARD OF SUPERVISORS AS ELECTION CANVASSERS.—The appellate court has jurisdiction in an original proceeding in *mandamus,* upon a proper showing, to direct the board of supervisors of a county, acting as a board of canvassers of the returns of an election for the office of presidential electors, to perform the duty imposed upon it by law as to the mode and manner of canvassing such returns; and where it appears that such duty is not being performed or is performed in a manner otherwise than provided by law, *mandamus* is a proper remedy.

ID.—SUFFICIENCY OF APPLICATION FOR WRIT.—It is held that, upon an examination of the application for the writ of mandate and its amendments, the allegations therein contained are sufficiently specific and certain to present the matters and things sought to be interposed as a ground for the issuance of the writ, and that a demurrer thereto was properly overruled.

ID.—FAILURE OF ELECTION BOARDS PROPERLY TO SIGN CERTIFICATE TO LISTS—SIGNATURES PROPERLY ALLOWED BY CANVASSERS—CHANGES NOT PERMITTED.—Where the boards of election in certain precincts had failed to sign the certificate to be attached to the lists, the canvassing board properly permitted such signatures. The duty of certifying such returns is purely ministerial, and may be completed seasonably, though such officers have neglected such duty at the time specified in the statute. But, at the time of such completion, there can be no modification or correction of the returns, and no addition or additions made thereto.

ID.—CERTIFYING NUMBER OF VOTES FOR CANDIDATES IN FIGURES—SUBSTANTIAL COMPLIANCE WITH STATUTE—RETURNS NOT INVALIDATED. The fact that certain boards of election, in lieu of writing in long hand in the certificate the number of votes received by each candidate respectively, had inserted the number of votes so received in figures, shows a substantial compliance with the statute, and in no sense invalidated the returns.

ID.—CERTIFICATE TO INSERT NAMES OF RESPECTIVE CANDIDATES—NAMES CONNECTED THEREWITH BY HORIZONTAL LINES—SUBSTANTIAL COMPLIANCE WITH STATUTE.—Where the returns in certain precincts

show that the tally-sheets had printed thereon the names of the respective candidates, separated by horizontal lines extending uninterruptedly across the page designated for the tally-lists and across the opposite page upon which the certificate of the number of votes received by such candidate was printed, there appears a substantial compliance with the statute requiring the officers to insert in the certificate the names of the respective candidates.

Id.—IMPROPER EVIDENCE OF WITNESSES BEFORE CANVASSING BOARD—DISREGARD OF TESTIMONY.—Where the improper evidence of witnesses was received before the canvassing board, without warrant of law, but constituted no ground of action upon the part of the board in making the canvass, any such testimony must be disregarded.

Id.—CONSTRUCTION OF STATUTORY PROVISIONS AS DIRECTORY OR MANDATORY.—It is a recognized rule as to the construction of statutory provisions as directory or mandatory, that directory acts are such as are not of the substance of the thing provided for, but relate to matters of form, while matters of substance are to be construed as mandatory.

Id.—MANDATORY PROVISION AS TO TALLY-LISTS.—Section 1258 of the Political Code, though containing some provisions which have been held directory, yet, in so far as it provides for the duty of clerks and the manner of placing tallies upon the tally-sheet as they are called aloud by the proper officer, and for the preservation of the tally-lists, is matter of substance, and is mandatory upon the election officers.

Id.—RESULT OF ELECTION OF CANDIDATES TO BE DETERMINED FROM TALLY-LISTS.—The result of the election, or determination of the number of votes for any particular candidate, must be determined from an inspection of the tally-lists, which must control as to the election or non-election of a candidate.

Id.—EFFECT OF CERTIFICATE OF ELECTION—DECLARATION OF RESULT COMPUTED FROM TALLY-LISTS—TALLY-LISTS CONTROLLING.—The certificate of election provided for in section 1174 of the Political Code, declaring the number of votes cast for the candidate named therein, as elected, is, in legal effect, only a declaration of the result of the computation from the tally-lists, and if incorrect or at variance with the tally-lists, the certificate must yield in importance to that of the tally-list itself.

Id.—DUTY OF BOARD OF CANVASSERS—TALLY-LISTS TO CONTROL ACTION OF ELECTION BOARD.—When the tally-list is presented to the board of canvassers showing the same to have been kept or purporting to have been kept in the manner provided by section 1258 of 'the Political Code, the number of votes properly computed from such tallies shall be taken and received as the vote for an individual candidate at the election, even though the election board had declared a lesser or greater number than shown by the tally-sheets.

ID.—VOTES FOR PRESIDENTIAL ELECTORS IN PRECINCT—ABSENCE OF TALLY-MARKS AS TO ONE ELECTOR.—Where the returns from a precinct in the county showed that one of the candidates for presidential elector received upwards of one hundred votes, as shown by the tally-marks, whereas another, as shown by the tally-marks, received five or six votes, while in other cases no tally-marks were set opposite the names of other candidates, yet the certificate showed that each of said candidates received a number of votes in excess of one hundred, it is held that in each case the vote of the precinct must be considered as shown by the tally-marks, and that a candidate receiving no tally-marks is entitled to no votes at such precinct.

ID.—DUTY OF CANVASSERS TO COMPUTE AND NOT CONSTRUE EFFECT OF RETURNS.—The board of canvassers has no power to conjecture the number of votes received by any candidate, or to make inference that any candidate received votes in excess of the marks indicated by the tallies. Their duty is simply to compute, and not construe the effect of returns.

ID.—IRREGULARITIES IN ACTION OF BOARD NOT VITIATING RETURNS.—The breaking of the sealed envelopes containing the precinct returns under the direction of the board prior to the time set for the opening thereof in public, and the permitting of the board of electors to insert in their certificates the total number of votes received by candidates, were irregularities contrary to the provisions of the statute, but under the circumstances appearing, constituted no good cause for rejecting the returns.

APPLICATION for Mandamus to the Board of Supervisors of Los Angeles County.

The facts are stated in the opinion of the court.

Jeff. P. Chandler, Joseph H. Call, Lynn Helm, Milton K. Young, Albert Lee Stephens, and Oscar A. Trippet, for Petitioners.

J. D. Fredericks, District Attorney, Joseph Ford, Assistant District Attorney, J. W. Carrigan, and Louis W. Meyers, for Respondents.

THE COURT.—This is an original proceeding in *mandamus* instituted by the petitioners, candidates for the office of presidential elector, through which they pray for an order of this court commanding the board of supervisors of Los Angeles County to canvass the returns at the recent election in the manner provided by law, it being claimed that said board

is proceeding and threatening to make such canvass in a manner other than that provided by statute.

Respondents have interposed a demurrer to the petition and application as amended, upon general grounds and specifically, on account of certain uncertainties claimed to exist. We are satisfied that this court upon a proper showing possesses the jurisdictional authority to direct the board to perform a duty devolving upon it by law; that the mode and manner of canvassing election returns is provided by statute and when a showing is made that the duty so devolving upon the board of supervisors, sitting as a board of canvassers, is not being performed, or is being performed in a manner otherwise than that provided by law, *mandamus* is a proper remedy. We are further satisfied, upon an examination of the application and its amendments, that the allegations therein contained are sufficiently specific and certain to present the matters and things sought to be interposed as a ground for the issuance of the writ. The demurrer is therefore overruled.

Upon the return and hearing it was developed that in certain election precincts the boards of election had not completed their duties in and about attaching their signatures to the certificate by section 1174 of the Political Code required to be attached to the lists; that the board of supervisors sitting as a canvassing board had permitted members of such election boards to complete the returns theretofore transmitted to the clerk of the county by attaching to the certificates the signatures of a majority of such election boards. We are of opinion that the duty of certifying such returns is purely a ministerial duty, and that duties of that character may be completed seasonably, even though the officers have neglected such duty at the time specified in the statute for its performance, such completion, however, not to include any modification or correction of the returns, or addition or additions thereto.

It was further developed that in certain election precincts the boards of election had, in lieu of writing in long-hand in the certificate the number of votes received by each candidate respectively, had inserted the number of votes so received in figures. This, we think, is a substantial compliance with the statute and in no sense invalidated the returns. In other pre-

cincts the returns submitted to this court by stipulation show
that the tally-sheets had printed therein in appropriate spaces
the names of the various candidates, separated by horizontal
lines extending uninterruptedly across the page designated
for the tally-list and across the opposite page upon which
the certificate of the number of votes received by such candi-
date was printed. The officers intrusted with that duty
neglected to insert in the certificate the names of the respective
candidates, which, however, were sufficiently indicated by the
name printed on the tally-sheet within the horizontal lines
above referred to, and this we think was a substantial com-
pliance with the statute.

While it appears that evidence was taken by introducing a
number of witnesses, it was conceded that such action was
without warrant of law and constituted no ground for any
action upon the part of the board in making said canvass,
and any such testimony must be disregarded.

The serious and chief question presented for our consid-
eration is a determination as to whether the number of votes
which appear to have been given for a candidate, as shown
by the tally-lists, shall prevail where the name is in conflict
with the certificate declaring the result, or whether the board
may in its discretion accept the tally-lists in one instance and
the certificate in another where the facts in their opinion
justified such action. The Political Code, after specifying the
duties of election boards preliminary to the count, provides
by section 1257: "After the lists are thus signed, the board
must proceed to open the ballots, and count and ascertain the
number of votes cast for each person voted for." Section
1258 provides that "Each clerk must write down each office
to be filled, and the name of each person marked in each bal-
lot as voted for to fill such office, and keep the number of
votes by tallies, as they are read aloud. Such tallies must
be made with pen and ink, and immediately upon the com-
pletion of the tallies the clerks who respectively complete the
same must draw two heavy lines in ink from the last tally-
mark to the end of the line in which such tallies terminate,
and also write the initials of the person making the last tally
in such line." Section 1261 provides that "The board must,
before it adjourns, inclose in a cover, and seal up and direct
to the county clerk, the copy of the register upon which one

of the judges marked the word 'voted' as the ballots were received, all certificates of registration received by it, one of the lists of the persons challenged, one copy of the list of voters, and one of the tally-lists and list attached thereto. . . . The board must also immediately transmit unsealed to the county clerk a copy of the result of the votes cast at such polling-place, which copy must be signed by the members of the board, and which copy shall be open to the inspection of the public.'' Section 1263 provides that ''The sealed packages containing the register, lists, papers, and ballots must before the board adjourns be delivered to one of its number, to be determined by lot, unless otherwise agreed upon.'' Section 1264 provides that the member selected must without delay deliver such packages to the county clerk, nearest postmaster, or other persons designated. Section 1267 provides that these packages must be produced before the board of supervisors when it is in session for the purpose of canvassing the returns. The effect which is to be given these tally-lists is influenced much by a determination of the question as to the mandatory or directory character of the provision of the statute requiring such lists to be kept. It is a well recognized rule that directory acts are such as are not of the substance of the thing provided for. In construing a statute matters of substance are to be construed as mandatory. We are of opinion that section 1258, providing for the duty of clerks and the manner of placing tallies upon the tally-sheet as the same is called aloud by the proper officer, is a mandatory provision, notwithstanding the fact that other provisions of that section with reference to the initials of the clerk and of the drawing of the lines have been held to be directory. These last provisions are obviously of form and not of substance, but that provision which requires the tallying of the vote as called aloud and the preservation of such tally is certainly, to our minds, matter of substance and it is mandatory upon the election officers. We are further of opinion that the result of the election, that is to say, a determination of the number of votes cast for any particular candidate, must be determined from an inspection of these tally-lists. While section 1174 provides for a certificate upon the part of a majority of the board which shall declare the number of votes cast for each candidate, such certificate, in legal effect, can be nothing

less than a declaration of the result of the computation from the tally-lists, and if such declaration upon its face is incorrect, or at variance with the tally-lists, such certificate must yield in its importance to that of the tally-list itself; not unlike the computation of a column of figures the declared total of which is obviously erroneous, and a question arises as to the accuracy of the addition. This can be determined from the aggregate of the figures appearing in the column constituting the total, and the total, if improperly computed, must yield to the corrected result. We are of opinion, therefore, that when the tally-list is presented to the board of canvassers showing the same to have been kept, or purporting to have been kept, in the manner provided by section 1258, the number of votes properly computed from such tallies shall be taken and received as the vote for that individual at such an election, even though the board of election had declared a lesser or greater number than shown by such tally-sheets. In this determination we are influenced by the well-reasoned case of *Rice* v. *Board of Canvassers of Coffey County,* 50 Kan. 149, [32 Pac. 134]. We have examined the statute there considered and find it identical with our own. In discussing the question it was there said: ''The preponderance of decisions under statute somewhat similar to ours, however, appears to uphold the view that the tally or enumeration of the votes in the poll books may be considered in verifying the returns, and that if a disparity exists between the footings and the tallies the latter should control,'' citing: *Dalton* v. *State,* 43 Ohio St. 652, [3 N. E. 685] ; *State* v. *Hill,* 20 Neb. 119, [29 N. W. 258] ; *People* v. *Ruyle,* 91 Ill. 525; *Simon* v. *Durham,* 10 Or. 52; *State* v. *Cavers,* 22 Iowa, 343; *Trueheart* v. *Addicks,* 2 Tex. 221. See, also, *Hughes* v. *Parker,* 63 Kan. 297, [65 Pac. 265].

The returns exhibited from one of the precincts showed that one of the candidates for presidential elector, as shown by the tally-marks, received upwards of one hundred votes, whereas another received, as shown by the tally-marks, five or six votes, while in other cases no tally-marks whatever were set opposite the names of other candidates. The certificate, however, showed that each of said candidates had received a number of votes in excess of one hundred. In our opinion,

20 Cal. App.—25

the proper rule in canvassing the vote from such precinct is to give to each candidate the number of votes shown by the tally-marks opposite his name, without regard to what may be shown by the certificate declaring the aggregate number of votes received by him, and where no tally-marks whatever are placed upon the tally-sheet opposite the name of the candidate, such candidate is entitled to no votes whatever from such precinct, notwithstanding the fact in the certified column he is declared to have received a certain number of votes. The clerks of election are officers and presumed to do their duty, and where they purport to keep the number of tallies by the marks in the manner provided by the statute, and purport to place such marks opposite the name of each candidate as his name is read aloud, it must be presumed that they did their duty and placed all of the tally-marks opposite the names as they were called. Much was said as to the effect of this conclusion as tending to disfranchise electors. This cannot be the effect, for there is nothing before the board of canvassers which in any legal manner indicates that any one of the candidates received votes in excess of the number of tallies as shown by the tally-marks set opposite their names, and for a canvassing board to undertake, upon a theory of inference, to say that it is only fair to conjecture that the others received an equal number of votes, would be to confer a power upon the board of canvassers not reposed in them by law, their duty being simply to compute and not to construe the effect and character of returns. (*People* v. *Stewart*, 132 Cal. 283, [64 Pac. 285] ; Paine's Law of Elections, secs. 603, 604.

To summarize, it is the opinion of this court:

1. That the board of supervisors acting as a board of canvassers have no authority to take extrinsic evidence with reference to returns.

2. It is not authorized to call in the precinct officers to alter, change, or correct the returns, but where the returns are complete, save and except the authentication thereof, the election board may be permitted to complete the same by adding their signatures thereto.

3. It is not authorized to reject the tally-lists and accept the result as declared in the certificate, if there be a variance between the two. Its duty is to reject the result as declared

by the election board and accept the tally-lists where there is a conflict between them.

4. In estimating or counting the votes as shown by the tally-lists each mark represents one vote and the marks, and not the number thereof in the squares, are to be accepted as indicating the votes cast, and it is immaterial in what squares such marks may be placed. The total number of marks, rather than the squares, should control.

5. Where there are tally-sheets showing the number of votes cast for any candidate for presidential elector such tallies indicate the number of votes received by him, and where no tally-marks are placed upon such tally-sheet indicating that the candidate received any votes, he is entitled to no votes from such precinct.

6. The breaking of the sealed envelopes containing the precinct returns, under the direction of the board, prior to the time set for the opening thereof in public was contrary to the provisions of the statute, but did not constitute such an irregularity as to require that the returns be entirely rejected.

7. In instances where the supervisors have permitted the board of election to insert in their certificate the total number of votes received by candidates, which action, in our opinion, is not warranted by the statute, nevertheless, the tallies appearing from which the canvassing board may determine the number, the total figures as subsequently supplied may be ignored, and no injuries could result therefrom and the same would constitute no good cause for rejecting the returns.

8. In no case is the board authorized to add, or permit any person to add, or deduct from, or in any manner erase, change, or modify the tally-list opposite the name of a candidate voted for, as shown by the tally-sheets returned by the board of election.

A peremptory writ of mandate is ordered to be issued, directing the respondents to canvass the election returns in accordance with the conclusions set forth in this opinion.