[Civ. No. 629.   Third Appellate District.—October 26, 1909.]

In the Matter of the Contest of Election of Supervisor for the Second Supervisor District of Lassen County. S. S. BASS, Respondent, v. G. B. LEAVITT, Appellant.

ELECTION CONTEST—PLEADING—ANSWER TO STATEMENT—SUFFICIENCY. Though no answer to the statement in an election contest is required by the Code of Civil Procedure, yet it is proper for the contestee to answer the same, setting forth his denials thereto, and also the facts or grounds upon which he relies to support his claim to the office. But as a contestant cannot recover unless he alleges his constitutional qualifications for eligibility, the same result would follow as to a contestee, who answers by mere denials.

ID.—COUNTER STATEMENTS.—Where both parties filed statements, and both were contestants and contestees, though the appellant filed no answer to the respondent's statement, yet, by the filing of his counter statement, he thus presented the issues as effectively as he could have done in answer to respondent's statement.

ID.—BALLOTS IMPROPERLY REJECTED BY ELECTION BOARD—IDENTIFICATION—IMPROPER ENVELOPE.—The trial court properly counted for the respondent ballots cast for him which were improperly rejected by the election board and which were sufficiently identified by them as being marked "rejected," though placed in an improper envelope for canceled and unused ballots.

ID.—JUDGMENT DECLARING TIE VOTE—BALLOTS IMPROPERLY CAST FOR RESPONDENT—DISTINGUISHING MARKS—REVERSAL.—Where the judgment declared a tie vote for the office in controversy, and that no election was had therefor, and it appears that three ballots counted for the respondent had improper distinguishing marks, rendering them invalid under the law applicable thereto, thus entitling appellant *prima facie* to a judgment declaring his election, the judgment rendered must be reversed.

ID.—PARTICULAR DISTINGUISHING MARKS.—A ballot containing the stamp of a cross directly upon the words "yes" or "no" in voting upon a constitutional amendment, and one containing a written name in the blank column below and outside of all officers to be voted for, and another stamping a double cross, one in the proper voting space and another outside of it, each contains a particular distinguishing mark rendering the same invalid.

ID.—BLUR IN CROSS—CLEAR INTENTION OF VOTER SHOWN.—A mere blur in a cross caused by a blotch of indelible ink in the circle for the straight party ticket and in the space where a judge is voted for in another column, is not such a distinguishing mark as will defeat the intention of the voter, where the arms of the cross were properly placed and are clearly discernible.

ID.—STATEMENT OF ILLEGAL VOTES—DISQUALIFIED VOTERS—STATEMENT
OF DISTINGUISHING MARKS NOT REQUIRED.—The statement of illegal
votes to be furnished, only applies to such votes appearing valid
on their face which were rendered illegal by being cast by disqual-
ified voters. No statement is required in the case of votes which
are found at the trial to contain distinguishing marks rendering
them invalid upon their face regardless of the qualification of the
voter.

ID.—SPEEDY DETERMINATION OF ELECTION CONTESTS CONTEMPLATED.—
The law contemplates a speedy determination of election contests
both in the lower court and in this court, and unnecessary delay
therein caused by counsel is not to be approved.

APPEAL from a judgment of the Superior Court of Las-
sen County. F. A. Kelley, Judge.

The facts are stated in the opinion of the court.

Pardee & Pardee, for Appellant.

Rankin & Julian, and W. M. Boardman, for Respondent.

CHIPMAN, P. J.—In the election for supervisor of the sec-
ond supervisor district, Lassen county, the canvassing board
returned a tie vote between the only two candidates, appellant
and respondent. On November 14, 1908, S. S. Bass filed his
statement of contest. The grounds of his contest were that in
Janesville precinct there were two legal ballots legally cast
for him, which were rejected by the board of canvassers, which
would have entitled him to the certificate had they been
counted.

On November 25, 1908, George B. Leavitt filed his statement
of contest in which he stated that the canvassing board de-
clared the election in the three precincts—namely, Janesville,
Johnstonville and Secret Valley precincts—to have resulted in
eighty-eight votes having been cast for each contestant. The
statement then sets forth as grounds for contest that the
"boards of judges of election in said Janesville and Johnston-
ville precincts were guilty of malconduct in the following par-
ticulars, to wit: That said board of election, or board of judges
of election, rejected and failed to count certain legal ballots or
votes which were given to and should have been counted for
contestant," and "counted and gave to the respondent cer-
tain illegal ballots, which should not have been counted at all.

That had all the legal votes in said precincts which were cast for contestant, been counted for him he would have been shown to be entitled to be declared elected. That if only such votes as were legal and entitled to be counted had been counted for the respondent, contestant would have been shown to have received the highest number of votes and entitled to receive a certificate of election. That had said legal ballots cast in said precincts been properly counted contestant would have been shown to have received the highest number of votes, and entitled to be declared elected to said office of supervisor." In other respects the statement complies with the provisions of the Code of Civil Procedure respecting the subject before us.

The cause came on regularly for hearing on December 11, 1908, and by leave of court contestant Bass filed an answer to the statement of contestant Leavitt. The two contests were consolidated by consent of the parties and at the close of the trial the court found that ballots numbered 1 and 2, cast in the Janesville precinct, which had been rejected by the election board, should be counted for Bass, and that ballots numbered 132 and 152 which had been counted for Bass, bore certain distinguishing marks and should not be counted. This left the contestants still with an equal number of votes and the court so found, overruling Leavitt's objection to certain other ballots which, in the recanvass by the court, were counted for Bass. The judgment was that "neither of said litigants is, or has been, elected to said office." Contestant Leavitt alone appeals. The bill of exceptions discloses the matters in controversy. Contestant Leavitt will hereinafter be referred to in this opinion as appellant and contestant Bass as respondent.

The recount showed the following result: Each party was given seventy-eight ballots without objection. Appellant was given ten ballots in the Johnstonville precinct over the objection of respondent. These ballots, however, were not brought up and the rulings on them, being presumably correct, must stand, making the vote for appellant eighty-eight. Respondent was given ten ballots, five in the Janesville and five in the Johnstonville precinct, over the objection of appellant, making his total vote eighty-eight, and thus a tie vote was produced. These ballots are now before the court for review. Obviously, if any one of these ten votes should have been re-

jected, the trial court erred, and contestant should have been awarded a certificate of election.

Appellant's objection to respondent's filing an answer to the former's statement was overruled. It seems to us quite proper for a contestee to answer the statement made by the contestant, although the Code of Civil Procedure does not require it. Usually the contestee sets forth in his answer not only his denials of the contestant's statement but also the facts or grounds on which he relies to support his claim to the office. It was held in *Rutledge* v. *Crawford*, 91 Cal. 526, [25 Am. St. Rep. 212, 27 Pac. 779], that while an elector who was a candidate may institute a contest and defeat the election attacked, he may not have judgment that he was elected instead of the defendant, unless he alleges that he has the qualifications required by the constitution to make him eligible to the office. The same result would follow, it seems to us, where the contestee answers by mere denials. Here, however, both parties file statements, and in fact both are contestants and both contestees. Appellant filed no answer to respondent's statement, but he filed his statement, thus presenting the issues as to his claim as effectively as he could have done in answer to respondent's statement.

Respondent offered ballots numbered 1 and 2, in his own favor, cast in Janesville precinct, which had been rejected and the court admitted them over appellant's objection. It appeared that on the back of each of these two ballots was written the word "rejected" and they were inclosed and returned in an envelope indorsed, "Envelope for spoiled, canceled and unused ballots and stubs of ballots used." It is objected by appellant that if these two ballots "had been properly returned with the voted ballots, there would have been no trouble in identifying the ballots rejected. The indorsements and signatures of the members of the board would be sufficient identification. (Pol. Code, sec. 1257.)" But, "coming in as they do in the wrong envelope, and unindorsed as required by law, they should not have been counted and the court erred in admitting the evidence." The clerk of the election board testified that he recognized the two ballots, and that he wrote the word "rejected" on them, and that it was placed there by him under the direction of the board after the board had concluded to reject them. He placed the ballots in the envelope as directed, and he testified that the docu-

ments were in the same condition as when returned by the board. We fail to discover anything on the face of the ballots which warranted their rejection by the board. The court was justified in receiving the ballots in evidence, and no objection to their being counted appearing, otherwise than as suggested above, they were properly counted for respondent.

Ballot No. 3, in the Janesville precinct, cast for respondent, shows that the voter stamped the cross directly upon the words "Yes" or "No" in voting upon the several constitutional amendments, and in no instance in the voting square after the square containing these words, as the ballot plainly indicated should be the place for such mark. Section 1205, Political Code, provides as follows: "In case of a constitutional amendment, or other proposition submitted to a vote of the people, he shall mark his ballot by stamping in the appropriate voting square a cross (X) opposite the answer he desires to give." In *Hannah* v. *Green*, 143 Cal. 19, 23, [76 Pac. 708, 709], the court held that the stamp under the word "Yes," to a constitutional amendment, instead of after it, was not a distinguishing mark. But, as the court said: "At that time the law provided that the stamp should be 'against' the 'Yes' or 'No.'" The statute has since been changed, and at the time of the election in the present case read as shown above. We think the stamping as shown was a distinguishing mark and the ballot should have been rejected.

Ballot No. 4, cast in the Janesville precinct, shows in the column entitled "Blank Column," and below and outside of all spaces in which are the names of officers to be voted for, the word "Bryan," written with a pencil. This cannot be accounted for otherwise than as a distinguishing mark. Section 1211, Political Code, provides: "Any name written upon a ballot shall be counted for the office near which it is written, provided it is written in the 'blank column.'" Here the name is not written under any particular office, but under all of them. The ballot was erroneously counted for respondent.

Ballott No. 68, cast in Johnstonville precinct, was counted for respondent over appellant's objection. In the column entitled "Independent Nominations" occurs printed "For Judge of the Superior Court, F. A. Kelley." Opposite his name in the voting space is a cross stamped, and outside of this space and not on the border line of either of its sides, but on the line below the name, is stamped another cross. Sec-

tion 1211, Political Code, provides that "two or more impressions of the voting stamp in one square, or a (X) made partly within and partly without a voting square or space shall not make such ballot void." Under the law prior to the amendment of 1903, the supreme court held that two crosses in one voting square made the ballot void; but that a ballot with a cross after the candidate's name, but not in the voting square should be counted. The ballot in question was not even stamped in substantial compliance with the present law. It seems to us that it bore a distinguishing mark, and should not have been counted.

Ballot No. 102, cast in the Johnstonville precinct, counted for respondent, was objected to on account of a large blotch of indelible blue ink in the circle for a straight Democratic ticket and a similar blotch opposite the name of the Republican candidate for judge of the superior court. It is plain to be seen that the stamp was used, for the arms of the cross are discernible. The defacement may be traced to carelessness or nervousness—possibly from an overindulgence in intoxicating liquor—quite as readily as from design. The choice of the voter is clearly expressed, and we do not think he intended more.

The other ballots objected to by appellant were properly admitted in the recount.

Respondent makes no reply to these various objections. His only claim is that under the pleadings appellant did not so place himself before the court as to entitle him to the evidence offered, or to authorize the court to receive it—substantially, that in his statement appellant failed to state facts sufficient to constitute a cause of contest. The point is also made that appellant was required, under section 1116, Code of Civil Procedure, "to furnish to respondent a written list of the number of illegal votes and by whom given which he intends to prove at such trial" and that this he failed to do. There is a distinction between a ballot cast by an illegal voter and an illegal ballot cast by a legal voter. Where a ballot is attacked as illegal because cast by an illegal voter, the contestant is required to give notice of his intention to show that such vote was cast and by whom cast. It is the eligibility of the voter that is the issue. But there may be illegal votes cast by a legal voter—for example, a ballot bearing a distinguishing mark—a fact impossible of ascertainment except by

a recount. The voter himself remains unidentified and only the ballot is considered as it appears on its face. In the case of the illegal voter the ballot is unidentified, but the evidence otherwise shows that he voted and how he voted. In such cases a list of all such alleged illegal voters must be furnished the contestee (Code Civ. Proc., sec. 1116). The present case is not unlike that of *Abbott* v. *Hartley,* 143 Cal. 484, [77 Pac. 410], where it was said, as we think is true here: "There were sufficient grounds of contest here set forth to apprise the contestee of the nature of the attack which was made, and the proof was the usual proof in such cases—an inspection of the ballots and objections to certain of them as containing distinguishing marks. There was nothing in this line of proof that was not in strict accord with the allegations of the contestant—nothing that the contestee could not have anticipated and foreseen; and even if such had been the case, upon his application, time would have been granted him to meet the case on its merits." (Citing *Minor* v. *Kidder,* 43 Cal. 229.) We do not think the case is one where it would have been possible for either contestant to discover in advance of the trial the ballots which bore distinguishing marks and the persons by whom they had been cast. Indeed, this latter fact did not appear at the trial nor was it essential to a determination of the issues.

The contest was initiated in November, 1908, and was decided in December, 1908. The transcript on appeal was not filed here until July 2, 1909, and appellant's brief was filed July 30, 1909. Respondent's brief was not in when the case was placed on the October calendar. The law contemplates a speedy trial of such cases by the lower court, and gives precedence on appeal "next after the cases in which the people of the state are parties." (Code Civ. Proc., sec. 57.) The delay in reaching final judgment is not attributable to this court or the trial court, and manifestly is greater than should have occurred.

The judgment is reversed.

Burnett, J., and Hart, J., concurred.