[Civ. No. 893.   Second Appellate District.—November 23, 1910.]

## GRANT STARKWEATHER, Respondent, v. JOHN H. DAWSON, Appellant.

ELECTION CONTEST — REJECTED BALLOTS — INCLOSURE IN ENVELOPE OTHERWISE MARKED—BURDEN OF PROOF UPON PLAINTIFF.—Where the plaintiff contesting the election of one holding the certificate of election asked that an envelope marked "Spoiled, canceled and unused ballots" be opened as containing rejected ballots, the burden is upon the plaintiff to show they were in fact rejected ballots, and to show to the satisfaction of the court that they had been erroneously rejected.

ID.—WAIVER OF PROOF—TAKING BENEFIT OF BALLOTS.—Where defendant failed to object to plaintiff's statement that the envelope contained rejected ballots, and not only permitted them to be introduced without objection to the sufficiency of the proof, but also claimed and received the benefit of such portion thereof as appeared to be in his favor, his action was equivalent to a stipulation of the fact that they were rejected ballots, or was at least a waiver of the required proof on the part of the plaintiff.

ID.—ABSENCE OF INDORSEMENT OF REJECTED BALLOTS—FAILURE TO OBJECT—ESTOPPEL UPON APPEAL.—Where the defendant appealing, at the time when the ballots claimed to have been rejected were offered in evidence, failed to object to their introduction on the ground that

they were not indorsed as rejected, as required by section 1257 of the Political Code, he should not be heard to object upon appeal on that ground.

ID.—GENERAL RULE—WAIVER OF OBJECTION TO EVIDENCE NOT SPECIFIED. The general rule is that a party objecting to the admission of evidence must specify the grounds of his objection when the evidence is offered, and he will be considered as having waived all objections not specified.

ID.—PROPER DENIAL OF MOTION TO STRIKE OUT EVIDENCE OF BALLOTS.— The court properly denied a motion of the defendant, at the close of plaintiff's testimony, to strike out the evidence of the ballots contained in the envelope as not having been identified as rejected ballots. Had such objection been made at the proper time, plaintiff would no doubt have been given leave to call the election officers to prove the character of the ballots; and to have granted such motion would have deprived plaintiff of the right to make such proof.

ID.—DIRECTORY PROVISIONS OF CODE AS TO DEFACING SPOILED BALLOTS AND INDORSEMENT OF REJECTED BALLOTS.—The provisions of section 1209 of the Political Code as to the mode of defacing spoiled ballots, as well as to the indorsement of rejected ballots required to be made on the envelope by section 1257 of that code, are directory merely.

ID.—PROVISIONS NOT GOING TO SUBSTANCE OF ELECTION—ELECTORS NOT TO BE DISFRANCHISED.—The electors of a precinct should not be disfranchised merely because the election officers have failed to comply with provisions not going to the substance of the election. Mere irregularity on the part of the election officers, or their omission to observe mere directory provisions of the law, will not vitiate the poll.

ID.—DUTY OF COURT AS TO ERRONEOUSLY REJECTED BALLOTS.—It was the duty of the court, if in fact voted ballots had been erroneously rejected, and such fact was duly established, or proof thereof waived, to count them for the persons for whom they were voted, regardless of mere noncompliance with directory provisions on the part of the election board.

ID.—PRIMA FACIE CORRECTNESS OF RETURNS—RECOUNT—PROOF OF INTEGRITY OF BALLOTS.—The *prima facie* correctness of the returns and canvass of the ballots should not be overturned by a resort to a recount of the ballots, save and except upon sufficient and satisfactory evidence of the integrity of the ballots.

ID.—CONCLUSION OF TRIAL COURT SUSTAINED.—Where there is nothing disclosed by the record which would justify the appellate court in disturbing the conclusion of the trial court as to the result of the recount, and ballots have been admitted upon evidence satisfying the trial court as to their integrity, this court cannot disturb its

ruling, where it is not well satisfied that the evidence does not warrant it.

ID.—SHOWING BY DEFENDANT'S CERTIFICATE OF ELECTION—VOTED BALLOTS REJECTED.—Where defendant introduced his certificate of election, which stated that one hundred and thirty-four ballots were cast, that seventeen of them were spoiled, and that one hundred and nineteen votes were cast for the opposing candidates, it shows on its face that at least fifteen out of seventeen ballots spoiled were actually voted ballots cast, being included in the one hundred and thirty-four ballots certified to have been cast, and such fifteen ballots were therefore voted ballots rejected, which also appears from their removed numbers.

APPEAL from a judgment of the Superior Court of Kings County. J. W. Mahon, Judge presiding.

The facts are stated in the opinion of the court.

Dixon L. Phillips, J. L. C. Irwin, Maurice E. Power, and Robt. W. Miller, for Appellant.

Choynski & Humphreys, and H. Scott Jacobs, for Respondent.

SHAW, J.—This is an election contest. At the municipal election held in the city of Hanford on April 11, 1910, Starkweather and Dawson were opposing candidates for the office of city trustee. The canvass of the returns of the election made by the city trustees resulted in Dawson being declared elected by a majority of nine votes. Thereupon, Starkweather instituted this contest in the superior court of Kings county, praying for a recount of the votes. Upon a recount thereof by the court, Starkweather was declared elected by a majority of two votes, and a judgment accordingly rendered in his favor, from which the defendant or contestee appeals.

The only point upon which appellant relies for a reversal is his contention that the trial court erred in counting certain ballots which were claimed by plaintiff to have been wrongfully rejected by the election officers of the fourth precinct. These ballots, seventeen in number, were inclosed in a sealed envelope upon which the words "Envelope for spoiled, canceled and unused ballots" were printed. Upon the completion of the recount of the ballots returned as accepted and

counted by the precinct election officers, counsel for plaintiff said: "If the court please, we now ask the court to make an order opening this envelope inclosing the spoiled, canceled and unused ballots. I presume the rejected ballots will be contained in there, and we would like to have it opened for the purpose of ascertaining that, and then we will proceed to inspect the rejected ballots"; whereupon counsel for defendant said: "Our same objection goes to this offered evidence." "By the Court: Yes, same objection." The objection referred to was one theretofore interposed at the commencement of the recount to the opening of the envelopes containing the voted ballots accepted by the election officers and the recounting thereof. This objection in full is as follows:

"Mr. Phillips (attorney for defendant): The defendant Dawson objects to the offered evidence and the application for an order to direct the clerk to open the Exhibit Number Eight for identification, on the ground and for the reason that the same is not the best evidence of what the votes were cast at the election; that the certificate of the board of election is the best evidence under the circumstances as presented by the evidence here introduced in court, that the evidence shows from the city clerk, Hill, former city clerk, the present city clerk, and present and former city marshal, A. M. Fredericks, that the custody and control of the offered evidence, together with all of the other envelopes and exhibits introduced in the case, have not been under the control exclusively of either the former city clerk, James A. Hill, or the present city clerk, D. C. Williams, at any time since the eleventh day of April, 1910, but on the contrary the evidence shows without conflict that the offered evidence, together with all the exhibits marked for identification, have been in the joint control and in the joint possession of the city marshal, Fredericks, who was a witness on the stand, at all the times, together with James A. Hill, the former city clerk, and the present city clerk, D. C. Williams, and that besides, the evidence shows affirmatively that one M. B. Washburn, who was a former deputy city clerk, had knowledge of the combination of the vault in which the offered evidence was subsequently kept; and that also one Z. D. Johns was a deputy city clerk at all the times from the time that James A. Hill, the former city clerk, was in office, up to and including the

eighteenth day of April, 1910; and in addition to that, that certain packages of these election returns were opened by the board of trustees of the city of Hanford at the canvassing of the returns, and that it is in evidence from Mr. Hill, that certain of those returns were cracked—that the seals were cracked and broken when they were delivered to him and afterward when they were delivered to the city board of trustees, and as to the certain or particular ones, the seals of which were broken, that he couldn't say which ones they were." This objection was overruled. Thereupon, the court ordered the clerk to open the envelope marked "spoiled and unused ballots," whereupon the following colloquy occurred: Counsel for defendant: "Have you counted these, Mr. Clerk? Mr. Clerk: "No, sir." Counsel for defendant: "Well, you had better count them." The Court: "What are those?" Counsel for plaintiff: "Ballots that were rejected by the election board." The clerk thereupon counted the ballots and announced that there were seventeen. As the recount of these seventeen ballots proceeded objections were interposed by each party upon the ground of the manner of marking some of the ballots, and defendant asked that certain of the ballots be counted for him, which was done. The recount thereof resulted in Starkweather getting ten additional votes and Dawson getting two, the other five, for reasons unnecessary to here mention, being rejected by the court.

In addition to these ballots being inclosed in the envelope so marked for "spoiled, canceled and unused ballots," none of them were indorsed as required by section 1257, Political Code, but defendant, at the time of counting the same, interposed no objection upon such ground, nor did he question their being rejected ballots, unless the lengthy objection heretofore quoted can be regarded as an objection raising the question.

Section 1257, Political Code, provides that "all ballots rejected for illegality must be indorsed upon the ballot the cause of such rejection, and signed by a majority of the election board, and thereafter strung upon a string." It is conceded the election board failed to comply with this provision. A critical examination of defendant's lengthy objection, however, discloses nothing calculated to acquaint plaintiff or the court with the fact that defendant raised any objection to

the introduction of the ballots on account of such neglect of duty on the part of the election board. It is true that at one stage during the recount defendant's attorney stated: "There is another point that should be considered; we ought to take into account the spoiled ballots; I think the spoiled ballots were returned with the rejected ballots." To which and other like suggestions the court replied: "You gentlemen may raise that point when you get to your part of the case."

The suggestion made cannot be regarded as an objection to the count of the ballots upon the ground that they were not in fact rejected ballots.

The duty devolved upon plaintiff to establish the fact that these ballots inclosed in the envelope marked and intended for "spoiled, canceled and unused ballots" were rejected ballots, and to show to the satisfaction of the court that they had been erroneously rejected. When, however, they were offered by plaintiff, with a statement to the effect that they were rejected ballots, and defendant not only failed to question the correctness of the statement, but permitted them to be introduced without objection to the sufficiency of proof establishing their character, claiming and receiving the benefit of those appearing in his favor, it was equivalent to a stipulation of the fact, or at least a waiver of proof which a proper objection would have otherwise rendered necessary as a condition of introducing them in evidence.

Waiving the sufficiency of the record as affording sufficient evidence that the ballots were rejected, and not unused and canceled ballots, we are of opinion that appellant, having at the time when they were offered neglected and failed to interpose any objection to the introduction of the ballots in evidence, upon the ground that they were not in fact rejected ballots or indorsed as required by section 1257, Political Code, he should not now be heard to complain upon such ground.

"The general rule is that a party objecting to the admission of evidence must specify the ground of his objection when the evidence is offered, and will be considered as having waived all objections not so specified." (*People* v. *Manning,* 48 Cal. 338; *Crocker* v. *Carpenter,* 98 Cal. 418, [33 Pac. 271]; *Wise* v. *Wakefield,* 118 Cal. 107, [50 Pac. 310]; *Bundy* v. *Sierra Lumber Co.,* 149 Cal. 772, [87 Pac. 622]; *Bass* v. *Leavitt,* 11 Cal. App. 582, [105 Pac. 771].)

For like reason, that defendant had waived objection upon the grounds referred to, the court did not err in denying his motion made at the close of plaintiff's testimony to strike out the evidence afforded by these ballots upon the ground that "there has been nothing shown to identify the ballots returned as spoiled and rejected ballots." Had the objection been made at the proper time, plaintiff would no doubt have been given opportunity to call the election officers to the witness-stand and meet such objection by proof of the character of the ballots. (*Bass* v. *Leavitt,* 11 Cal. App. 582, [105 Pac. 771].) To have granted the motion without again traversing the ground would, in effect, have deprived plaintiff of the right to make such proof.

Section 1207, Political Code, directs that before any ballot shall be taken from the ballot-box the ballot clerk must proceed to deface the unused and spoiled ballots by drawing across the face thereof in writing-ink with a pen two lines which shall cross each other, and shall immediately place all such defaced ballots within an envelope and seal such envelope, and a majority of the election officers shall write their names across the sealed portion of the envelope. The fact that none of the ballots were so defaced is unimportant and signifies little, for the reason that the provisions of this section, as well as those contained in section 1257, are merely directory. Electors of the precinct should not be disfranchised because the election officers fail to comply with provisions which do not go to the substance of the election. "Mere irregularity on the part of election officers or their omission to observe some merely directory provisions of the law will not vitiate the poll." (McCrary on Elections, sec. 225.) Says the same author (section 228) : "Those provisions of a statute which affect the time and place of the election and the legal qualifications of the election are generally of the substance of the election, while those touching the recording and return of the legal votes received and the mode and manner of conducting the mere details of the election are directory." Therefore, it was the duty of the court, if in fact voted ballots had been erroneously rejected, and such fact duly established or proof thereof waived, to count them for the person for whom they were voted, regardless of such acts or omissions on the part of the election board. (*McCarthy*

v. *Wilson,* 146 Cal. 328, [82 Pac. 243] ; *Bourland* v. *Hildreth,*
26 Cal. 161; *Stinson* v. *Sweeney,* 17 Nev. 309, [30 Pac. 997] ;
*Russell* v. *McDowell,* 83 Cal. 71, [23 Pac. 183].)    It is true
that the *prima facie* correctness of the returns and canvass
thereof should not be overturned by a resort to a recount of
the ballots, save and except upon sufficient and satisfactory
evidence of the integrity of the ballots.    There is nothing,
however, disclosed by the record which would justify us in
disturbing the conclusion of the trial court in this regard.
As said in *Tebbe* v. *Smith,* 108 Cal. 108, [49 Am. St. Rep. 68,
41 Pac. 455, 29 L. R. A. 673] : ''While the ballots should be
admitted only after clear and satisfactory evidence of their
integrity, yet, when they have been admitted, this court will
not disturb the ruling, unless we in turn are as well satisfied
that the evidence does not warrant it.''

Defendant offered in evidence the certificate of the election
officers whereby they certified that the number of ballots voted
was one hundred and thirty-four, and that the number of
ballots spoiled was seventeen.    This statement to the effect
that seventeen ballots were spoiled is entitled to little weight,
in view of the fact that all of these ballots had the numbers
torn therefrom, indicating that they had passed through the
ballot-box, and the further fact that in the same document
the election officers certify that only one hundred and nine-
teen votes were cast for the opposing candidates, which fact
tends to show that fifteen of the seventeen votes certified as
spoiled must have been voted and passed through the ballot-
box and were included in the count of one hundred and thirty-
four ballots certified as having been voted.

Upon the facts as disclosed by the record, the judgment of
the lower court should be affirmed, and it is so ordered.

Allen, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court,
after judgment in the district court of appeal, was denied by
the supreme court on January 19, 1911.