[Civ. No. 1246.   First Appellate District.—November 23, 1912.]

THE PEOPLE, ex rel. STEPHEN J. SILL, Petitioner, v. D. J. MURPHY, JOHN F. MULLINS, WM. E. BRIDGE, F. W. FOSS, and J. M. KELLEY, Members of and Constituting the Board of Supervisors of the County of Alameda, State of California, and JOHN P. COOK, County Clerk, and Ex-officio Clerk of the Board of Supervisors, Respondents.

ELECTION RETURNS—DUTY OF CANVASSING BOARD—DISCREPANCY BE-TWEEN CERTIFICATE AND TALLY-LIST—POWER OF DECISION.—It is the duty of the canvassing board, in making the abstract of the votes of an election, to consider the entire returns, to wit, the certificate of the election officers, the list of voters, and the tally-list; and when there is a discrepancy or conflict between the certificate of the officers conducting it and the tally-list, as regards the number of votes cast for a particular person, the canvassers, after comparing the certificate and tally-list with the list of voters returned, must decide which is correct, and make an abstract of the votes accordingly.

ID.—ABSENCE OF ARBITRARY RULE AS TO DUTY AND POWER OF CAN-VASSERS.—No arbitrary rule can be laid down as to the duty and power of the canvassers. Upon the proper comparison, the canvassers may be justified in counting the votes as shown by the tally-list, rather than the number stated in the certificate, and *vice versa.*

ID.—MISSING RETURNS—POWER OF CANVASSERS TO SUPPLY DUPLICATE HELD BY INSPECTOR.—Where the official returns from a precinct were missing and lost after their return to the county clerk, and could not be found after diligent search, the canvassers, after waiting six days, had the power to supply evidence of such returns from the official duplicate held in the custody of the inspector of elections, as required by law to be kept. Such official duplicate may be resorted to, as lawful secondary evidence of the lost returns, to establish the result of the vote.

ID.—CANVASS OF RETURNS OF PRESIDENTIAL ELECTION—REPRESENTA-
TIVE VOTE OF ELECTION OFFICERS FOR FIRST ELECTOR—CERTIFICATE
TO ALL ELECTORS IN EACH GROUP—REASONABLE ASSUMPTION
AGAINST FRAUD.—At a presidential election, each voter by voting
alike for a group of electors, is in fact voting for the president
of his choice. Upon a canvass of such returns, it is held to be
a fair and reasonable conclusion from the facts appearing, that the
returns as a whole justify the assumption that the election officers,
as the count progressed, finding that the several names in each group
were receiving the same votes, decided to tally against the first name
in each group, as and for all in each group, while giving the certifi-
cate of election to each one of them. This assumption will acquit
the election officers of fraud in the certificates of election.

ID.—MANDAMUS TO CANVASSERS OF PRESIDENTIAL ELECTION IN CERTAIN
PRECINCTS NOT PERMISSIBLE—ABSENCE OF SHOWING OF ELECTION
RETURNS.—*Mandamus* will not lie to compel the board of can-
vassers to disregard the certificate of election, and require them
to canvass the votes of presidential electors in certain precincts by
exclusive reference to the tally-list therein, especially where there
is no full showing as to the contents of the election returns in those
particular precincts. In the absence of such showing, no clear
violation of a legal right appears to sustain the writ.

ID.—MANDAMUS IN DISCRETION OF COURT—CLEAR LEGAL RIGHT—INJUS-
TICE OR WRONG NOT ALLOWED.—*Mandamus* lies to a great extent
in the discretion of the court. It should be allowed only to secure
or protect a clear legal right, and should never be granted when its
enforcement would work an injustice or accomplish a wrong.

APPLICATION for Mandamus to the Board of Supervisors
of Alameda County acting as a Board of Canvassers.

The facts are stated in the opinion of the court.

W. T. Kearney, Thos. E. Hayden, and R. B. Bell, for
Petitioner.

Wm. H. Donohue, Walter H. Burpee, Wm. T. Satterwhite,
for Respondents.

THE COURT.—The petitioner in this proceeding was one
of the Democratic candidates at the recent general election for
the office of presidential elector. He complains of the means
and methods employed by the respondents, as the board of
supervisors of Alameda County, in canvassing the election

returns of the vote cast for presidential electors in three certain precincts known respectively as Oakland precincts Nos. 64, 77, and 103 of said Alameda County.

He seeks by *mandamus* to compel the respondents to exclude from their calculations the certificate of the precinct officers as to the number of votes cast, and for whom cast, in precincts 64 and 103, and prays that respondents be commanded to confine their canvass of the votes cast for presidential electors in these particular precincts to the result alleged to be shown by the tally-list, as kept and returned in each instance by the precinct officers.

In this behalf it is alleged by the petitioner that there is an apparent conflict between the tally-list and the certificate of the election officers as to the number of votes cast in these two precincts for the several candidates for the office of presidential electors. Because of this alleged conflict in the returns the petitioner insists that the tally-list is the only return which can be properly considered and canvassed by the respondents.

With reference to precinct No. 77, it is the claim of the petitioner that the election officers of this precinct not only neglected to certify to respondents the result of the election, but also failed to return the tally-sheet of the vote cast and counted in this particular precinct.

It is further alleged by petitioner, and admitted by the return to the alternative writ heretofore issued, that in the absence of the original returns from precinct No. 77, respondents are proceeding to canvass the vote cast in said precinct from and by means of the duplicate tally-sheet which the law requires shall be certified to and authenticated by the election officers, and retained for a period of six months by the precinct officer known and designated as the "inspector."

Since the oral argument upon this matter, which was upon demurrer to the petition so far as it relates to matters pertaining to the canvass in precincts Nos. 64 and 103, our attention has been called to and we have carefully considered the opinion rendered by the district court of appeal of the second district in the case of *People, ex rel. Del Valle,* v. *Butler, ante,* p. 379, [129 Pac. 600].

From the opinion in that case we cannot determine what the petition disclosed there as to the condition of the returns that

were considered in that case. We are not called upon therefore to discuss that case, or consider it as an authority here.

Upon the demurrer to the petition before us we are called upon simply to determine whether or not such petition justifies this court in giving to the petitioner the writ demanded.

At the outset it is well to have a clear understanding of the duty and powers of the canvassing board.

We believe the true rule to be as stated in 15 Cyc. 382, as follows: "It is the duty of the canvassing board, in making the abstract of the votes of an election, to consider the entire returns, to wit, the certificate of the election officers, the list of voters, and the tally-list; and where there is a discrepancy or conflict between the certificate of the officers conducting the election and the tally-list as regards the number of votes cast for a particular person or proposition, the canvassers, after comparing the certificate and tally-list with the list of voters returned, must decide which is correct and make an abstract of the vote accordingly."

*People* v. *Ruyle,* 91 Ill. 525, holds that both tally-list and certificate may be considered—the tally-list to be looked to where there is a doubt upon the face of the certificate, because of its informal character, as where the statement of the number of votes is set down below instead of above the signatures of the election officers.

In *State* v. *McFadden,* 46 Neb. 669, [65 N. W. 800], a case of *mandamus,* there was a discrepancy between the tally-list and the certificate. The court said:

"While generally such boards have no discretion in the discharge of their duties, the rule has its exceptions. . . . Where there is a discrepancy between the certificate of votes cast for any person for a particular office, and the tallies of the votes cast for him, the canvassers must determine from the entire returns which is correct . . . It therefore follows that it is the duty of the canvassing board, in making an abstract of the vote of an election, to consider the entire returns, to wit, the certificate of the election officers, the list of voters and the tally-list, and where there is a discrepancy between the certificate of the officers conducting the election and the tally-list as regards the number of votes cast for a particular person, the canvassers, after comparing the certificate and tally-list with the list of voters returned, must decide which is correct,

20 Cal. App.—26

and make an abstract of the vote accordingly. No arbitrary rule can be laid down. Upon such comparison the canvassers may be justified in counting the votes as shown by the tally-list rather than the number stated in the certificate, and *vice versa.*''

We think the above is as complete a statement of the correct rule as can be found in any decision of any court of last resort.

What follows in this opinion we believe to be a just application of the above rule.

It is not disputed here but that the board of canvassers had before them the full returns as to precincts Nos. 64 and 103 enumerated in section 1261 of the Political Code, including the poll-list, tally-list, and the certificate of the result, signed as required by law by each of the election officers. This court has before it no such record. It has but a meager statement as to some isolated matters culled by petition from such record. We have found no case in the limited time at our disposal for the examination of the questions involved in this proceeding, where any court has ever assumed to give directions, by writ of mandate, to the canvassing board that any one matter in the return before them shall be conclusive as to the result of the election, unless a full showing as to the contents of the election returns had been in some appropriate way presented to the court.

At the election just passed four separate groups of candidates for presidential electors, representing four different political parties, were voted for. In such case the voters, in exercising their right of franchise, in fact are expressing their preference for president. As a consequence it seldom happens that any voter discriminates between the candidates in his party group.

The only matter presented to this court by the petition on file is the statement that there is a discrepancy beween the number of votes given to each member of the group of presidential electors as shown by the tally and as totaled by the certificates of the officers of election. There is absolutely nothing upon the face of the petition to show that the board of canvassers may not, by the use of all the election returns required by law to be delivered by the board of election to the county clerk, arrive at a correct tabulation of the votes.

to which each candidate for presidential elector is entitled and which should be credited to him.

The meager statement in the petition before us does show that according to the tallies there was a difference between the votes counted for Mr. Wallace and his fellows in the same group of more than one hundred votes, a difference that is improbable. It may be that the full returns before the canvassing board disclosed a like difference in the tallies for the first name in each group and the other names in such group, while the certificate of the election officers gave each candidate in any one group the vote as shown by the tallies for the first name in the group.

Having in mind the facts above adverted to as to the character of the office for which these candidates were aspiring, is it not a fair and reasonable conclusion that the returns as a whole justify the assumption that the election officers, as the count progressed, finding that the several names in each separate group were receiving the same votes, decided to tally against the first name as and for all in such group?

This assumption will acquit the five election officers of having willfully and fraudulently made a false certificate as to the votes counted for each candidate, when they made such certificate giving to each name in each separate group the number of votes tallied against the first name only.

As before stated, the petition before us does not disclose what is in the full returns; but the observations just made illustrate the danger of any court attempting to direct the canvassing board as to what particular part of the return shall be considered as conclusive as to the votes received by the several candidates, without a full statement in the petition for the writ of all matters contained in the returns before the canvassing board.

Cases may occur where, upon a full return being made before the court, it may justly direct the canvassing board upon such a point. No such case is present in the one before us. The only facts before us as to precincts 64 and 103 are such as are stated in the petition and admitted by the demurrer. These facts make out no violation of a clear legal right.

To quote from *Rice* v. *Board of Canvassers,* 50 Kan. 149, [32 Pac. 134]: "The plaintiff seeks relief through an action of *mandamus,* which lies to a great extent in the discretion

of the court. It should be allowed only to secure or protect a clear legal right, and should never be granted when its enforcement would work an injustice or accomplish a wrong. (*State* v. *Marston,* 6 Kan. 524; *Peters* v. *Board of State Canvassers,* 17 Kan. 365; *State v. Stevens,* 23 Kan. 456, [33 Am. Rep. 175] ; *People* v. *Board of Canvassers,* 129 N. Y. 360, [14 L. R. A. 646, 29 N. E. 345] ; High on Extraordinary Remedies sec. 40; 14 Am. & Eng. Ency. of Law, p. 97.'')

The petition as to the matters relating to precincts Nos. 64 and 103 does not come up to the requirements of the above rule, and for that reason the demurrer thereto should be sustained.

As to precinct No. 77 it appears from respondents' answer and the evidence presented to this court in support thereof, that although the tally-list and certificate of the election officers as to the result of the election were duly returned to the county clerk, as required by the statute, they have since in some manner been lost, and after the most diligent search cannot be found. The duplicate of such papers, however, originally delivered to the inspector of elections, is now in the possession of the board.

It is the contention of petitioners that the respondents, although the tally-list and certificate cannot be found, have no power to resort to other evidence to establish their contents. And in this connection great stress is laid upon language used by the court in *People* v. *Stewart,* 132 Cal. 283, [64 Pac. 285], to the effect that no such evidence can be resorted to by the canvassing board, and especially that the board had no right to resort to the duplicate list of voters, tally-list, and list attached thereto, kept and retained by the inspector of said board of elections.

But the language used by the court must be understood in the light of the facts of that case.

In that case the board met on the first Monday after the election. No returns had been received from one precinct of the county, and the board, without waiting for the expiration of six days for the production of such returns, as plainly required by the law, proceeded to canvass the returns and declare the result. In doing so it sent for and used the duplicate list of voters, tally-list, and list attached thereto retained under the law by the inspector. This it clearly at that time

had no right to do. "It was forbidden to act, if the returns were not all in, until the lapse of six days."

In the present case what appeared to be the returns, that is to say, the packages from all the precincts, were before the board when it commenced to canvass. The six days have now expired; and if the papers constituting the election returns cannot be found, no substantial or just reason appears why resort may not be had to the duplicate original of such papers which the law requires to be preserved, and which *should be in the possession of the inspector.* They are official documents, and are duplicates of the ones that should have been sent to the county clerk—executed by the same officers and at the same time. It would seem that the primary and most important purpose of requiring a duplicate set of these records to be made and preserved was to meet just such a contingency as is presented in this case; in other words, to prevent a miscarriage as to the result of the election where the returns should, through either accident or design, be lost, destroyed, or misplaced. (*State* v. *Nerland,* 7 S. C. 241.)

It is a principle of law, found in the common law, laid down in all the text books, and carried into the statutes of this and of all other states, that where the right of any person depends upon the contents of a writing, and such writing is lost, destroyed, or cannot be found, the contents of such writing may be proved by secondary evidence.

In accord with this principle and rule of law, the election law of this state requires the board to wait a period of six days for the production of the missing returns before proceeding with the canvass. Upon the expiration of such period the board must proceed with the canvass, and if any return cannot be found we have no doubt but that the duplicate thereof required by the law to be kept may be resorted to to establish the result of the vote.

These views are in complete harmony with the views expressed by courts in other jurisdictions, and their adoption will result in effecting the principal object of the law concerning the canvassing of election returns, to wit, the ascertainment of the vote as actually given by the electors. To require the rejection of this safe evidence as to the contents of the lost or destroyed return would result in the disfranchisement of all the voters of a precinct for no fault of theirs. Such a

result should not be countenanced if within the principles of law and justice it may be avoided.

Nothing actually decided in *People* v. *Stewart*, 132 Cal. 283, [64 Pac. 285], is contrary to the views herein expressed. That the supreme court has not considered *People* v. *Stewart* authoritative as to all that is claimed for it by petitioners is evidenced by the record in the case of *Hosmer* v. *McGuire et al.* (S. F. No. 4724, not reported), where the court, upon petition of Hosmer, issued an alternative writ of mandate directed to the respondents, who were acting as a board of canvassers, commanding them to notify the members of certain precinct election boards to assemble at the office of respondents, and there permit them—said precinct officers—to complete their official duty by inserting in writing in the returned tally-list a statement of the vote cast for each candidate in the several precincts.

The foregoing disposes of all of the questions of law involved in the pleadings and the admitted facts of the present case; and for the reasons stated it is ordered that the demurrer, so far as it relates to the matters concerning precincts Nos. 64 and 103, be and it is sustained; and that the application for a peremptory writ of mandate be denied, and the alternative writ heretofore issued be dismissed.

LENNON, P. J.,
HALL, J.,
MURPHEY, J., *pro tempore.*