[Civ. No. 2386. Second Appellate District.—July 13, 1917.]

## S. H. TAFT et al., Petitioners, v. WILLIAM HAAS et al., Respondents.

MANDAMUS—CANVASS OF CITY CONSOLIDATION ELECTION RETURNS—TAX-PAYERS.—Taxpayers of a city are beneficially interested in a proceeding to compel the board of city trustees by writ of mandate to canvass the returns of an election held therein to determine whether the city should be consolidated with another city, since the matter bears a direct relation to the question of the amount of taxes to be paid.

ID. — ELECTION LAW — REJECTION OF VOTE OF PRECINCT—DISCREPANCY BETWEEN ROSTER AND POLLING LIST—COUNTING OF VOTE.—A board of city trustees in canvassing the returns of an election held for the purpose of determining whether the city should be consolidated with another city are not justified in throwing out the entire vote of a precinct because the number of names on the precinct roster fell short of the number of names on the polling list and number of ballots cast, and *mandamus* will lie at the instance of taxpayers to compel the counting of the vote of the rejected precinct.

APPLICATION for a Writ of Mandate originally made to the District Court of Appeal for the Second Appellate District to compel a board of city trustees to canvass annexation election returns.

The facts are stated in the opinion of the court.

Tanner, Odell & Taft, for Petitioners.

J. W. Ballard, and Charles D. Ballard, for Respondents.

WORKS, J., *pro tem.*—The respondents are the city clerk and the members of the board of trustees of the city of Sawtelle, and in this proceeding we are asked to require the trustees to canvass the returns of a certain election held in the city, to require the clerk to enter the result of the canvass upon the minutes of the trustees, and to direct all the respondents to perform certain other acts required by law in the premises. The petitioners are taxpayers, property owners, and registered voters and electors of Sawtelle.

The respondents contend that the petitioners are not beneficially interested in the relief sought, section 1086 of the Code

of Civil Procedure providing that the writ of mandate "must be issued upon the verified petition of the party beneficially interested," and that, for that reason, the petitioners have not legal capacity to sue. The election in question was held for the purpose of determining whether the city of Sawtelle should be consolidated with the city of Los Angeles. Whether the former city is to become one with the latter bears a direct relation to the question of the amount of taxes in future to be paid by petitioners, and either consolidation or no consolidation with Los Angeles is bound to affect the value of all property in Sawtelle. The petitioners are therefore beneficially interested in this proceeding. (*Eby* v. *Trustees of Red Bank School Dist.*, 87 Cal. 166, [25 Pac. 240]; *Frederick* v. *San Luis Obispo*, 118 Cal. 391, [50 Pac. 661].)

It becomes necessary now to state more fully the facts upon which this controversy is based and as to which there is no dispute. On the day of the election 300 votes were cast at one of the election precincts, which we may designate as precinct A, as shown by the tally list and by the certificate of the precinct election board. Of these 153 voted for consolidation and 147 against consolidation. While, however, 300 voters actually registered a choice at precinct A, the roster signed by the electors showed a total, only, of 297 signatures. Three who voted did not sign. In that part of Sawtelle not including precinct A the total vote for consolidation was 366 and against consolidation 369. Thus, without precinct A the result was against consolidation with a margin of three votes. The total vote, including the vote of precinct A, was, for consolidation 519, against consolidation 516; a direct reversal of the situation, also with a majority of three votes. When the board of trustees came to canvass the result of the election, the vote of precinct A was rejected from consideration upon the advice of the city attorney of Sawtelle that the discrepancy between the tally list and certificate on the one hand and the roster on the other had the effect to nullify the vote of the precinct.

The first question to be determined is whether the trustees were justified in casting out the vote of precinct A. They were not. The city attorney's advice to them in that regard is indefensible. The roster kept at an election precinct is in the charge of the precinct officials. It is their duty to require electors to sign it, and neither the vote of a nonsigning elector

nor that of the precinct is invalidated by their failure to discharge that duty. (*Hayes* v. *Kirkwood,* 136 Cal. 396, [69 Pac. 30] ; *Starkweather* v. *Dawson,* 14 Cal. App. 666, [112 Pac. 736] ; *People* v. *Butler,* 20 Cal. App. 379, [129 Pac. 600].) The showing of the tally list and of the certificate of the election officers controlled the showing made by the roster.

Notwithstanding the palpable fact that the electors of Sawtelle have indicated a desire that their municipality be consolidated with Los Angeles, we are confronted with the question whether we can relieve them from an apparent showing of record that their desire is exactly the reverse. The respondents contend that the board of trustees has exhausted its functions as a canvassing body, and that mandate will not issue to compel its further action in that behalf. The action taken by the trustees in their canvass of votes is shown by their minutes. In them mention is made of precincts 3 and 5. These were really consolidated for the election in question and constituted the precinct we have called precinct A. This is the showing made by the minutes, and the recital presents everything that the trustees did in the premises:

"The board canvassed the returns of the annexation election. In Precinct No. Three a discrepancy was found, the number of names on the roster falling short by three of the number of names on the polling list and of the number of ballots cast. The city attorney said the law required that these must agree and that only such number be reported as were found on the roster of voters. Gledhill and Aldrich moved that Precincts Nos. Three and Five be thrown out owing to the fact that the official roster did not correspond with the tally sheets or the number of votes reported, as required by the Supreme Court of the state. The vote stood Walker, Gledhill, Aldrich and Haas voting 'Aye,' Noes none. Absent, one. The returns of the remaining precincts were then considered. They showed a total of seven hundred and thirty-five votes cast, of which three hundred and sixty-six were yeas and three hundred and sixty-nine were nays."

The contention of respondents is that the minutes show that the board acted upon the entire returns before them; that, accordingly, the work of the canvass was completed, and that nothing further can be required of the board by the mandate of this court. Section 2 of the act under which the election was held (Stats. 1913, p. 578) contains a provi-

sion requiring the legislative body of a city in which such an election takes place, at the time of its .regular meeting next after the election, to meet and canvass the returns thereof. The section further provides, ''such canvass shall be completed at such meeting, if practicable, and in any event, as soon as practicable, avoiding adjournment or adjournments, until said canvass is completed.'' This provision places no time limit upon the labors of the canvassing board. In effect, its only requirement is that the canvass be *completed,* and that the work be performed as soon as practicable. Did the respondents trustees complete the canvass of the votes of the Sawtelle election? They did not include the vote of precinct A in the result stated by them in their minutes. As we have seen, that vote was properly cast and was a legal and necessary part of the entire vote of the city, from which the choice of the electors was to be determined. In rejecting the vote of the precinct the trustees assumed to decide a legal question and decided it wrongly, acting, of course, upon the advice of the city attorney. They tabulated and added together a part of the vote and rejected a part which was equally unimpeachable as a declaration of the choice of a considerable body of the electorate. Under such circumstances the conclusion seems inevitable that their work of canvassing was not completed and that it yet remains undone.

The question now left to be determined is, Will our mandate issue to require the completion of the canvass? It is conceded that the statute of the state providing for election contests has no application to an election such as the one with which we are now concerned. That being so, it would seem that mandate is the proper remedy for the situation here disclosed. We will naturally be diligent to discover some remedy for the existing ill, as it is shocking to a sense of justice to contemplate the possibility of a considerable electorate being disfranchised through the action of a canvassing board and of the result of an election being finally declared by such board to be the opposite of the true result.

The courts of California have spoken on questions closely related to the present one. The respondents rely upon *Gibson* v. *Twaddle,* 1 Cal. App. 126, [81 Pac. 727]. That case was like the present in some of its particulars. There a board of supervisors had refused to canvass the returns of a certain precinct, but had tabulated those of all the other precincts

in the county. The court was asked to require the supervisors, by mandate, to include the returns from the omitted precinct. The writ was refused, but upon the express grounds that the supervisors had concluded the canvass by certifying that one of the parties to the controversy had been elected to the office in question, that his certificate of election had been issued to him, and that section 1111 et seq., of the Code of Civil Procedure, as to election contests, provided a plain, speedy, and adequate remedy for the petitioner. It is true that there is some general language in the opinion which, upon a cursory reading, seems opposed to the view of the petitioners in this proceeding. A careful study of the case however, convinces that it does not really so stand in opposition. The case of *Cerini* v. *De Long*, 7 Cal. App. 398, [94 Pac. 582], is authority for resort to the remedy by mandate in such a case as the present. There the canvassing board declared an election void, refused to canvass any part of the vote, and ordered a new election. The board was required, by mandate, to make the canvass. *People* v. *Murphy*, 20 Cal. App. 398, [129 Pac. 603], deserves mention in this connection. There the writ of mandate was refused in a case in which it was asked for the purpose of requiring a canvassing board to disregard a certificate of election and to canvass returns solely upon the showing made by the tally lists; but much of the language of the opinion is favorable to the use of the writ where a plain case of violation of duty, with a consequent injury to the rights of the electorate, is shown. *People* v. *Butler*, 20 Cal. App. 379, [129 Pac. 600], is authority, in general, for the use of the writ of mandate to compel a canvassing board to perform its duty.

A peremptory writ of mandate will issue as prayed for.

Conrey, P. J., and James, J., concurred.